# THE TOWN OF FOX

*v.*

# THE TOWN OF KENDALL.

*Filed at Ottawa November 20, 1880.*

1. PAUPERS—*power of legislature to impose their support on towns, etc.* The legislature has the right to impose the support of paupers on counties, cities, incorporated villages or townships, as it may choose, this being a portion of the police power of the State, and the submission of the question whether paupers shall be a county or a township charge, to a vote of the people of the county, is not essential to the validity of a law making the paupers of a county a township charge.

2. SAME—*curative act of 1871.* If an election in a county in April, 1863, on the question of township support of paupers, was held before the act providing for the same had taken effect, under the constitutional provision in the old constitution, that no law should be in force until sixty days after its passage, unless otherwise expressed, section 34 of the Pauper act of 1871 cured the defect, if the townships had acted in good faith under the authority of such vote.

3. SAME—*residence to make township or county liable to another for support.* Under section 16 of the Pauper act, the county or town in which a person resided within six months before becoming a charge in another county or town, is made liable for the support of such poor person. It is not required that such person should have become a pauper in such township or county sought to be charged, but it is sufficient if he resided therein within six months before becoming a pauper, and the legislature had the constitutional power to make such municipalities liable.

4. SAME—*notice to town ultimately liable.* To hold a town liable for the support of a pauper who had a residence therein within six months before becoming

a pauper in another town, notice of the fact must be given to the town sought to be charged, and such notice must be given within a reasonable time, and it is a question of fact for the jury to say, from all the facts and circumstances, whether the notice given is a reasonable one.

5. CONSTITUTIONAL LAW—*retrospective curative statutes.* If the legislature might have provided for township support of paupers, without submitting the question to a vote in the county, it may, by subsequent retrospective legislation, cure any defect of an illegal vote. If the defect in an act or proceeding consists in doing or omitting something which the legislature might have made immaterial by prior law, it may be made immaterial by subsequent law.

6. SAME—*special legislation.* A statute which provides that where counties have voted for the support of paupers by townships, and counties have acted in good faith for the period of five years, under the authority of such vote, the acts of such townships and counties shall be deemed legal and binding, notwithstanding any informality in the time or manner of holding such election, etc., is not a special act, within the constitutional prohibition.

7. PAROL EVIDENCE—*to prove election, etc.* Under section 34 of the Pauper act of 1871, the fact that an election had been held in a county, and that it resulted in favor of making paupers a township charge, and that the townships had acted under the vote in good faith for more than five years, need not necessarily be proved by record evidence, but such election and its result may be shown by secondary evidence when the proper foundation is laid.

8. MUNICIPAL CORPORATIONS—*subject to legislative control.* The powers, duties and liabilities of municipal corporations, unless restrained by constitutional limitation, are wholly under the control of the legislature.

9. INSTRUCTIONS—*in language of the statute.* In a suit to enforce the statutory liability of one town to another, for the support of a pauper, an instruction was given in the language of the statute: *Held,* that there was no error in giving such an instruction. If the other party desired a construction of the language used, he should have asked an instruction for such purpose.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Kendall County; the Hon. CLARK W. UPTON, Judge, presiding.

Messrs. LEWIS & HOBERT, and Mr. H. T. GILBERT, for the appellant.

Mr. CHARLES WHEATON, and Mr. J. M. DURHAM, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This action was brought in the Kendall circuit court by the town of Kendall against the town of Fox, under section 16 of the chapter entitled "Paupers." Both towns are in that county. That section provides, in substance, that where a person shall become chargeable as a pauper within six months after coming into a county or town, who at the beginning of six months next preceding his becoming so chargeable resided in another county or town, it shall be the duty of the last named county or town to take charge of the pauper on receiving notice specified in the act, and on refusal, an action shall lie against the county or town on behalf of the county or town wherein such person became chargeable, to recover the costs and charges expended for such pauper.

Appellee bases its right of recovery on that section and an act approved the 13th of February, 1863, (Pub. Laws, p. 46,) which authorized the county to hold an election to determine whether the several townships of the county should support its own paupers. It is averred that such an election was held on the first Tuesday in April, 1863, in the county of Kendall, resulting in favor of each township supporting its paupers.

In the month of March, 1875, one Mallory came from Kansas to the town of Kendall, and worked there a time; then went to the counties of Livingston and Iroquois on a visit. After his return he labored for several persons residing in Kendall township. In September, 1876, he worked for one Pope, taking with him his trunk and clothing, and worked for him about one month, and boarded with him through the winter. In the following March he occupied a vacant house in the village of Fox, where he lived alone. On the 8th of April he returned to the town of Kendall and worked for a Mrs. Haines at $10 per month. He remained there until the latter part of August, when he became sick, and on the 6th of September he was taken in charge by the

town supervisors of the town of Kendall as a pauper. He at that time had $25, and objected to become a pauper. On the 31st of October the town clerk of Kendall mailed a notice to the town of Fox requesting that town to take charge of Mallory.

The General Assembly, we apprehend, have the undeniable right to impose the support of paupers on counties, cities, incorporated villages, or townships, as it may choose. This is a portion of the police power that may be exercised by that body according to its wisdom and sense of right. The duty may be, and it has been the usual course in this country, to impose it on counties, as a burthen, that each shall support its own poor. But there can be no question that it may be imposed on smaller municipal divisions, such as townships, villages, and cities. See *Town of Freeport* v. *Board of Supervisors*, 41 Ill. 495. This being a question of power, neither a municipality nor the courts can obstruct its operation on the ground of policy, or even relieve against hardships incident to the execution of the law.

The General Assembly then had the power to enact the law, and declared it in force in the counties of Kendall and DeKalb without submission to a vote of the people. That was only a matter of choice and not of duty, as it was not essential to the validity of the act that it should have the approval of a majority of the voters of the county.

But it is urged that as the act was approved on the 13th day of February, 1863, and provided that the question whether each township should support its own paupers should be voted on at the next election of town officers, the election could not be held until after the law became operative, and as there were not sixty days after its approval, saying nothing of the adjournment of the General Assembly, under the 23d section of article 3 of the constitution of 1848, it could confer no power to submit the question to a vote at the town elections in April of that year; that as the law was not then in force, the question could not be submitted till after it

was in force, which would be on the first Tuesday of April, 1864; that as a consequence the submission of the question on the first Tuesday of April, 1863, was without power, and was void. If this were conceded to be true, the question still arises whether the law of 1871 (Pub. Laws, p. 596, being section 34, p. 758, Rev. Stat. 1874,) does not cure the defect. It provides that where counties have voted for the support of paupers by townships, and counties have acted in good faith for the period of five years under the authority of such vote, the acts of such counties and townships shall be deemed legal and binding, notwithstanding any informality in the time or manner of holding such elections, or in recording or preserving the records of the same.

The language of this section is sufficiently broad to fully cover such an election as is claimed to have been held in this case. If it was informal as to the time or manner of holding the election, it is manifestly and fully within the provision. Nor do we understand that this proposition is controverted. But it is claimed the law is unconstitutional, but no section or clause of that instrument is referred to which prohibits such an act, nor are we aware of any which denies the power. It appears to be within the well recognized power of the legislative department of the government. (See Cooley's Const. Lim. 371.) That author says that it is within the power of the legislature by retrospective statutes to cure defects in legal proceedings, where they are in the nature of irregularities only, and which are not jurisdictional. Of this class are statutes which cure iregularities in the assessment of property for taxation and the levy of taxes; irregularities in the organization or elections of corporations, and of the votes or other action by municipal corporations, etc. He gives as a test, that if the thing which failed to be done, and which constitutes the defect in the proceeding, is something which the legislature might have dispensed with by a prior statute, then a subsequent statute dispensing with it retrospectively must be held valid. "And so if the

defect consists in doing something which the legislature might have made immaterial by prior law, it may be made immaterial by subsequent law."

We have seen the General Assembly might have enacted this law, and it would have become operative without submitting it to a vote. It therefore follows that as the vote was immaterial to the validity of the act, it may cure the defect of an illegal vote by a curative or retrospective law. And this act falls within and answers all of the conditions enumerated to render it constitutional and valid.

But it is insisted that the act is special, because it only embraces that class of counties in which towns have been supporting the poor for five years before it was adopted. The terms of the law seem to make it general. It applies to every township in the State that has been so acting for that period. It does not purport to apply to one, or even a small number of townships, but it is broad enough to embrace all when they have under a vote supported their poor for the required period. We are unable to see any reason for holding this a special law.

It is also urged that the court erred in permitting plaintiff to prove that there was no record of the election preserved, and to prove by verbal testimony that an election was held in the county resulting in favor of the townships supporting their own paupers. That section does not contemplate that the only proof shall be by record. It has provided for a case where there is an irregularity in recording and preserving the records of the same. But the requirement of the act is, that there should have been an election, whether regular or irregular, apparently resulting in favor of the townships supporting the poor, and that they should have acted five years in good faith under it. It is not required that it should have been legal and valid, and there being no record evidence of the fact preserved, it could be proved by parol. It is a fact that may be established by secondary evidence when the proper foundation is laid. There was, therefore, no error in proving

by the county clerk that an election was held, the result, and that the townships had acted under it in good faith more than five years. We do not see that any rule of evidence was disregarded by receiving this testimony.

It is manifest that Mallory was a resident of the town of Fox at the commencement of six months before he became a town charge. And the 16th section as amended by the act of 1875, (Pub. Laws, p. 90,) provides that period shall determine the liability of the town for his support. The statute only provides that a residence at that time shall be required. It is not required that he should have been a pauper in that township, and no other condition is imposed. Under this provision then, if Mallory was a resident of Fox at the beginning of the preceding six months before he became a pauper, although he may have resided the greater part of the subsequent period in Kendall township, he would still be a charge on Fox township. This is all the statute requires.

The General Assembly deemed it wise to fix some period, and that six months was proper. Whether it is the best is a question for it alone to consider. Having fixed it, the courts, the executive and all officers are bound to act upon and give it force and effect.

The strange proposition is urged that it would be unconstitutional for the General Assembly to bind individuals by such an enactment, and it is therefore powerless to so bind municipal bodies. The doctrine has, so far as we know, never before been questioned, that the powers, duties and liabilities of municipal corporations, unless restrained by constitutional limitation, are wholly under the control of the General Assembly. There is not the shadow of a doubt that body was acting within well recognized authority when it adopted this section. And the evidence clearly shows Mallory was a resident of the town of Fox at the beginning of six months before he became a pauper, and if so that town became liable for his support as such.

But it is claimed, even if there was such a liability, that it has been waived or the town of Kendall is estopped from enforcing it, by delaying to give notice within a reasonable time to the authorities of the town of Fox. The notice was not mailed by the town clerk of Kendall township to the town of Fox until the expiration of some fifty-four days after Mallory had been taken charge of as a pauper. It is urged that this delay was unreasonable, and released the town of Fox from all liability. There can be no doubt that to hold a town liable, reasonable notice must be given, but it was a question for the jury to determine, from all the circumstances, whether it was unreasonable, and they found it was not, and the evidence is sufficient to sustain the finding.

It is, however, claimed that the fifth of plaintiff's instructions was wrong, and misled the jury to an improper finding. The portion of the instruction to which exception is taken is this: " That is reasonable time which preserves to each party the rights and advantages he possesses, and protects each party from losses he ought not to suffer; and if in this case you find from the evidence that the town of Fox could have derived no benefit from an earlier notice than was given (if the evidence shows such notice was given) and that any delay shown by the evidence did not impair the rights of or operate injuriously to said town of Fox, then upon the question of reasonable time you should find for the plaintiff; provided you also find from the evidence that said notice was given or sent by mail, or otherwise, as hereinbefore in these instructions stated." Whilst this instruction may not be accurate, we are unable, under the evidence, to say that it prejudiced the defendant in its rights. It is not required, when a person becomes a pauper, that the officers having charge of the poor shall stop all other business and at once learn by investigation where the pauper resided six months previously. The law gives them a reasonable time for the purpose. There was no more, if so much, delay in this case as there was in the case of *Simms* v. *Clark,* 11 Ill. 137. That was the case of the return of a coun-

terfeit bank bill two months or more after it was passed. It was detected to be counterfeit by the auditor of public accounts, who gave notice on the 10th of October, and the bill was not offered to be returned until the 4th of November following. In this case there was not the same necessity for prompt notice, as in that, and yet that was held to be reasonable notice, and a recovery was had. It is objected that other of plaintiff's instructions failed to limit or qualify the term "notice" by the word "reasonable." The instructions use the language of the statute, and it would be unheard of to reverse because an instruction was given in the language of the statute. There was no error in giving such instructions. If defendant desired a construction of the language, he was at liberty to prepare and ask such an instruction, and on its being refused the question would arise whether that was error.

We perceive no error in giving, modifying or refusing instructions, nor do we find any error in the record requiring a reversal of the judgment of the court below, and it is affirmed.

*Judgment affirmed.*