[No. 5703.]

## COUNTY OF SAGUACHE v. TOUGH.

1.   **Cases Overruled, Distinguished, or Doubted — What is** said in Rio Grande Co. v. Phye, 27 Colo. 107, touching the liability of a county upon an implied contract for the support of a pauper, is pure dictum.—(396)

2.   **Contract—Where Implied—No** contract will be implied where the party alleges an express contract.—(397)

3.   **County Commissioners — Power to Contract in Support of the Poor Exclusive—The** board of county commissioners has the exclusive power to contract for the support of a pauper. The chairman, though the superintendent of the poor, has no power to bind the county by a contract for this purpose, unless for temporary relief, in case of emergency.—(399)

4.   **Pauper—Support of—The** support of the poor is not a public charge unless made so by statute.   The county cannot be made liable unless the pauper is registered pursuant to the

statute, nor unless an itemized account be presented to the
board—(400)

5. County Commissioners—Control of County Affairs—The
board of county commissioners has control of all affairs of the
county, except where other provision is expressly made.—(398)

*Appeal from Rio Grande District Court*—Hon.
JESSE G. NORTHCUTT, Judge.

Mr. I. J. BLOOMFIELD, and Mr. D. E. NEWCOMB,
Jr., for appellant.

Mr. JAMES P. VEERKAMP, for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of
the court:

The plaintiff brought this action to recover from
Saguache county for the value of board, medicine,
care and attention which he furnished to a pauper
whom, it is claimed, the county, under our statute,
was obliged to support. He got judgment and de-
fendant appealed.

Plaintiff's counsel devotes much argument to
establish the proposition that under our pertinent
statutes a county may be liable, upon an implied con-
tract, to pay for such aid. *Rio Grande County v.
Phye,* 27 Colo. 107, is cited. The matter there de-
cided was that, under the facts of that case, the
county was not holden, either upon an express, or an
implied, contract. The court, however, did say, that
it was inclined to the view that, in some circum-
stances under our statute, which makes paupers a
county charge, the county may be liable upon an
implied contract. As the writer of this was the
author of that, opinion, he is not embarrassed in now
observing that such reference, whether it is a cor-
rect, or an incorrect, statement of the law, was pure-
ly *obiter* and should not have been made. Appar-
ently it has induced plaintiff's counsel, and perhaps

·led the trial court in this case in its instructions, to conclude that this court, in a proper case of this character, will enforce an implied contract. The point is not involved here, and mindful of the result of a departure from good practice in the *Phye case,* ·we shall refrain from suggesting what our views may be upon a matter that is outside the record. We say the question is not involved here, because plaintiff .in his complaint declares upon an express contract, which he says he made for furnishing aid. That being true, there is left no room for an implied contract covering the same subject-matter which is embraced in the express contract. . Moreover, as we shall see later on, no valid contract, either express or implied, was made by plaintiff. There are only two questions before us: First: Was a contract proved? And, second: Can this action, under the fatcs, be maintained? ·

1.   In his testimony plaintiff says that in a conversation with Braun, chairman of the board of county commissioners, the latter was advised as to the helpless condition of the alleged pauper, and that Braun told plaintiff to give him the necessary care, and to put in his bill therefor to the county, and that it would be paid. Braun's testimony is somewhat different, it being that he ·told plaintiff to apply for relief to the board of county commissioners, and that he, as one of its members, would be inclined to vote to grant it. If, however, it be assumed that plaintiff's version of the transaction is correct, as apparently the jury found it was, the question is whether it was within the power of the chairman alone to enter into a contract that binds the county. By statute the chairman is *ex officio* superintendent of the poor.—Session Laws 1887, p. 239; Session Laws 1901, p. 146. By another statute the county clerk of such county is required to keep a book entitled

"Record of the County Poor," in which certain entries in connection therewith must be made. "All applicants for relief as county poor shall, before any relief is furnished, be duly registered, either in person or by the county superintendent of the poor, in the record"; and the statute expressly says that "no warrant shall be issued by any county clerk in payment of relief furnished to any applicant, unless the person relieved is duly registered * * * and the amount and nature of such relief duly appears upon the record." The superintendent of the poor is required "to render monthly to the board of county commissioners an itemized and sworn statement of his expenditures as such superintendent," which "shall be filed with the county clerk, and shall show the name of each and every person for or on whose account such expenditures have been made and the nature and cost of the relief furnished."—Session Laws 1895, p. 226. Whenever the superintendent of the poor furnishes relief to a poor person he must render an account thereof, which, before it is passed by the board of commissioners, or warrants issued in settlement therefor, must be properly itemized, and have attached to it the certificate of the clerk that the person to whom relief is furnished has been properly registered, and no county commissioner can vote in the affirmative for the allowance of any account unless it is so certified, itemized and sworn to.

In this state all county business, not otherwise specially provided for, is under the control of a board of county commissioners.—Rev. Stats. 1908, § 1204. Unless there is some statute which takes from the board the duty of providing for the poor, with the power to make valid contracts for their support, which binds the county, such power is vested in the county board. We are cited to, and find, no such

statute. Although the chairman of the board is *ex officio* superintendent of the poor, he has only such power in the premises as pertains to a superintendent. It can scarcely be claimed, in view of the statutes to which we have referred, that a superintendent of the poor, who is but an officer or agent of the board, rather than the board itself, is invested with any such authority as is here asserted. We hold, under our statutes, that the board of county commissioners, not its chairman as superintendent of the poor, unless it be in the case of an emergency for temporary relief, has the exclusive power to make contracts for the support of the poor, and like power over expenditures of money therefor. It necessarily follows that, even if plaintiff was promised by the chairman of the board that the county would pay him for care of the pauper, the promise is not binding upon the county, unless thereafter it was duly approved or ratified or adopted as its own, by the board as such. There is no pretense here that the chairman, even assuming that it was his duty to do so, reported to the board the alleged contract, or that the board knew of it, or was aware that plaintiff was furnishing relief under what he supposed to be a contract, until plaintiff presented his bill therefor two years or more after the transaction between him and the chairman took place.

2. If, however, the chairman, or superintendent of the poor, was invested with power to make an express, or by his acts could give rise to an implied, contract with plaintiff that is binding upon the county, plaintiff is not in a position to maintain this action upon it. Under the statute of 1895 it may be that, in case of an emergency, as to which we express no opinion, the superintendent of the poor has power temporarily to procure necessary care for a poor person, and bind the county to pay for it. The par-

ties seem to agree that such power is conferred. Assuming for our present purpose that he has, this does not authorize him to make a contract for permanent support, such as is claimed in this case, covering a period of two years, and extending one year beyond his own term of office. But if the relief furnished by plaintiff comes under the provisions of the act of 1895 referred to, since this act prescribes the mode or manner in which the obligation of the county thereunder is to be discharged, which plaintiff has entirely ignored, and with which no compliance has been had by any of the parties concerned, this action does not lie. If the poor person has not been registered, either because of his own neglect or failure, or that of plaintiff, or the superintendent of the poor, or if the certificate of registration is lacking, and if such registry should have been made and the certificate given, before plaintiff can demand of the county the allowance of the claim, he must see to it that such compliance with the statute is had. If the clerk of the county, or the superintendent of the poor, neglects his duty, a mandamus will lie to compel action, and unless, and until, registry of the poor person is duly made and such itemized account of an applicant, or some one in his behalf, accompanied with the statutory certificate is presented to the board, the statute expressly forbids its members to allow or approve it.—*City of Pueblo v. Dye,* 44 Colo. 40, 96 Pac. Rep. 969. In some cases, and possibly in this, the enforcement of the law may result in a hardship, but it is well established in this country by the authorities that paupers are not a public charge unless made so by statute. It is competent for the legislature to impose this charge upon the respective counties and to define the duties of the board of county commissioners in the premises, and to fix the conditions upon which poor persons shall

become entitled to public support and to prescribe the mode in which the liability of counties therefor shall be discharged. All persons are presumed to know .the provisions of the statutes in that respect, and if they fail to comply therewith, the courts cannot, at their instance, make or change the law to conform to their own omissions. .

Because no valid contract was made in this case and, even if it was, the mode prescribed by the statute for the allowance of claims arising therefrom for the services rendered was not complied with, the judgment, which was for plaintiff below, must. be reversed and the cause remanded.

*Reversed and remanded.*

CHIEF JUSTICE STEELE and Mr. JUSTICE WHITE concur.