CERRO GORDO COUNTY, Appellant, v. BOONE COUNTY.

Poor persons: RELIEF: STATUTORY PROVISIONS. Legal liability for care of the poor is governed entirely by statute, and a county can only be charged with such expense by a compliance therewith.

Same: TRANSIENT POOR: RECOVERY FOR CARE. The statutes do not provide for relief to transient paupers, and recovery therefor must be based upon some promise to pay, either express or implied, and must be established by satisfactory evidence. Mere failure of one county to provide such relief is not a circumstance tending to establish its liability to another county for aid furnished: Nor will the fact that officers of one county furnished a transient poor person with transportation to another county constitute the basis for an implied contract to reimburse the latter for such aid.

*Appeal from Story District Court.*—HON. C. G. LEE, Judge.

WEDNESDAY, NOVEMBER 15, 1911.

ACTION to recover expenses for care and medical treatment of a nonresident pauper resulted in the dismissal of the petition. Plaintiff appeals.—*Affirmed.*

*Fitchpatrick & McCall, J. C. Robinson* and *Robt. M. Witwer,* for appellant.

*Harpel & Cederquist* and *E. H. Addison,* for appellee.

LADD, J.—In January, 1908, William R. Wood, after examining the timber on an island in the Des Moines river, near Fraser, with a view of contracting to cut it, broke through the ice and wet his feet. Being unable to find a lodging place, after walking several miles, he crawled into a straw stack, and remained during the night. In the morning both feet were frozen. After walking two or three miles, he caught a ride into Boone. He then had but $1.50, and after procuring a lunch inquired for a physician. Being advised by the chief of police that the county physician was out of town, he remained at the police station until the next morning, and at about 11 o'clock a. m. was examined by the county physician, who seems to have properly dressed his feet, and said he "would have to get him into a hospital." Upon his return to the station, J. W. Keigley, a member of the board of supervisors to whom had been assigned the duty of looking after the poor in that vicinity, conversed with him concerning the care of his feet, and was told by Wood that the county physician had said he would get him into a hospital. To this the officer responded, "Did he say that?" His feet were painful throughout the day (Sunday), and at about 11 o'clock a. m. Monday the county physician, in response to a message, opened one or two blisters and dressed his feet again, and upon ascertaining he had formerly lived in Wisconsin inquired if he wished to return there, and said he would talk with the supervisor about it. At about 5 o'clock in the afternoon, the chief of police informed him, "We are going to send you away on the 5:30 train," took him to the depot, and gave him a ticket to Nevada, the county seat of Story county. Keigley paid the chief of police the

forty-eight cents expended for the ticket, and thereafter was reimbursed 'by the county on claim presented. Upon reaching Nevada, Wood obtained food, and slept that night in a livery stable. In the morning the city marshal, after building a fire, took him to the city hall, where he was examined by a local physician and his feet dressed. In the evening, money was raised by the marshal, from which he bought him a ticket to Mason City, and furnished him money to pay his way to Wisconsin. He was put aboard the train, and arrived at Mason City the next morning in a condition such as to preclude proceeding farther. At the instance of the humane officers of that county, he was taken to a hospital, and accorded the consideration and given the care and treatment usually bestowed in civilized communities on the unfortunate.

The story reads like the parable of the man who was wounded and left by the wayside half dead. The priest and the Levite passed by on the other side; but the good Samaritan "had compassion on him, . . . bound up his wounds, pouring in oil and wine, . . . and brought him to an inn, and took care of him."

It was found necessary to amputate both feet, and the expenses incurred by Cerro Gordo county for his treatment, surgical operations, and subsequent care amounted to $713.95. For this amount, judgment is sought against Boone county, on the theory that it was obligated, upon discovering the condition of this nonresident pauper, and having begun caring for him, to furnish him such care and treatment as was essential to restore him to health, and that, instead of discharging such obligation, its officers, at a cost of a few cents, compelled him to move on, and as a consequence plaintiff was at the expense stated. Upon showing the facts as recited, verdict was directed for defendant, and subsequently judgment entered thereon.

1. POOR PERSONS: relief: statutory provisions.

The showing as made was not at all complimentary to

the officers of Boone county, but, as no evidence was introduced in its behalf, there may be circumstances somewhat extenuating their conduct in casting a helpless man, sorely in need of medical aid, adrift, in order to evade the expenditure of a few dollars. The statutes provide adequate relief for paupers applying for succor having settlement in a county of this state, and if this is afforded by a county other than of the pauper's settlement, recovery may be had of the latter. Section 2228, Code. But the county only becomes liable upon compliance with the statutes; that is, the liability of any county is purely statutory. *Cooledge v. Mahaska County,* 24 Iowa, 211; *Cerro Gordo County v. Wright County,* 50 Iowa, 439; *Otis v. Strafford,* 10 N. H. 352; *Mansfield v. Sac County,* 60 Iowa, 11; *Gawley v. Jones Co.,* 60 Iowa, 159.

The care of the poor was not a municipal function at the common law. Matters of charity were thought more appropriate for the church. It was ordained by the ancient kings that "the poor should be sustained by parsons, rectors of the church, and by parishioners, so that none of them die for want of sustenance." Later, and supposedly about the time of Henry VIII, the law seems to have made paupers a charge on certain municipalities. Blackstone, in 1765, said: "The law not only regards life and member and protects every man in the enjoyment of them, but also furnishes him with everything necessary for their support. For there is no man so indigent or wretched, but he may demand a supply sufficient for all the necessaries of life from the more opulent part of the community, by means of the several statutes enacted for the relief of the poor." 1 Blackstone Com. 131, (10th Eng. Ed.)

Undoubtedly, the Legislature is endowed with power to create liability on the part of the county for the care of the poor, and to determine under what circumstances one county shall be liable to another. *Town of Fox v. Town of Kendall,* 97 Ill., 72. But, in the absence of such pro-

visions, the obligation to pay any expenses incurred, no matter how meritorious the claim, is not to be implied, for the corporation is under neither a moral nor legal obligation to care for the poor. "Whatever may be the duty of individuals, from religious or charitable considerations, it is certain the public is bound by no moral obligations to support the poor of the community. That duty being legal and of positive institution is to be carried no farther than the express provisions of the poor laws." *Overseers of Poor v. Overseers of Poor,* 3 Serg. & R. (Pa.) 117.

The only statutory provision authorizing the relief of the transient poor is found in section 2225 of the Code: "A person coming from another state, and not having

*2. SAME: transient poor: recovery for care.*

become a citizen of, nor having a settlement in the state, applying for relief, may be sent to the state whence he came, at the expense of the county, under an order of the district court or judge; otherwise, he is to be temporarily relieved in the county where he applies." The manner of relief is prescribed in section 2230: "The township trustees of each township, subject to general rules that may be adopted by the board of supervisors, shall provide for the relief of such poor persons in their respective townships as should not, in their judgment, be sent to the county poor house. But where a city is embraced, in whole or in part, within the limits of any township, the board of supervisors may appoint an overseer of the poor, who shall have within said city or part thereof, all the powers and duties conferred by this chapter on the township trustees. The relief may be either in the form of food, rent or clothing, fuel and lights, medical attendance or in money, and shall not exceed two dollars per week for each person for whom relief is thus furnished, exclusive of medical attendance." All moneys expended are to be paid out of the county treasury (section 2232, Code), and "when relief is granted by a county to a poor person having a settlement in another

county" recovery may 'be had of the latter for the reasonable expenses so incurred.   Section 2228, Code.

But reimbursement for aid extended to a transient pauper is not directed, and, if plaintiff is entitled thereto, this must be owing to an implied promise on the part of Boone county to repay Cerro Gordo county.   Cases may be found where an individual who has furnished the necessities of life to a pauper, after a municipality has omitted to discharge such duty, has been permitted to recover the value thereof, but in most of these this was contemplated by the statute authorizing the relief.   Our statutes direct by what officers relief shall be furnished, and there is no ground for charging the county, unless it is supplied by these, or at their instance.   *Beetham v. Lincoln*, 16 Me. 137; *Hamilton County v. Meyers*, 23 Neb. 718, (37 N. W. 623); *Copple v. Davie County*, 138 N. C. 127, (50 S. E. 574); *Cantrell v. Clark County*, 47 Ark. 239, (1 S. W. 200); *Kittredge v. Newbury*, 14 Mass. 448; *Gourley v. Allen*, 5 Cow. (N. Y.) 644.   See note to *Board of Commissioners of Sheridan County v. Denebrink*, 9 L. R. A. (N. S.) 1234; *Patrick v. Baldwin*, 109 Wis. 342, (85 N. W. 274, 53 L. R. A. 613); *Overseers of Poor v. Overseers of Poor*, 3 Serg. & R. (Pa.) 117.   As well said in *Patrick v. Baldwin, supra*: "While an implied contract is sufficient, as indicated, it must be established, if one endeavors to recover upon it, the same as any other implied contract. The statute creates a liability to relieve destitute persons, but not a liability to individuals who may voluntarily perform that service.   It empowers appropriate agents of municipalities to make their liability effective by necessary contracts to that end, and imposes upon such agents the duty to exercise such power.   If they refuse to do so, they are doubtless amenable in some way for such misconduct, but the law gives no private person the right to perform the duty of such officers.   *Otis v. Strafford*, 10 N. H. 352. Performance of that duty by the person designated by

law is absolutely essential to create a binding obligation upon the municipality to compensate one for relieving a poor person, legally entitled to relief at its expense. . . . There is no more reason for holding that a person may aid a pauper, upon the supervisors of the town in which such pauper has a legal settlement neglecting their duty, and hold such town liable therefor, than for holding that one may repair the highways of a town, because its supervisors neglect their duty in that respect, and recover of such town therefor. The duty of the municipality in both cases is regulated by statute, and in neither case can it be bound to a private person for services rendered, except by contract made as contemplated by law."

The cases holding to the contrary seem to overlook the circumstance that the relief is purely statutory; that the duty to extend relief is expressed in general terms, leaving the occasion, method, and extent of relief to the judgment and discretion of the local officers; and therefore, to create a binding pecuniary obligation, there must be a contract to that effect, or services must have been rendered at the request of officers authorized to enter into the agreement. See *Seagraves v. Alton,* 13 Ill., 366; *Ogden v. Weber County,* 26 Utah 129, (72 Pac. 433); *Shreve v. Budd,* 7 N. J. Law, 431; *Trustees of Cincinnati Township v. Ogden,* 5 Ham. (Ohio) 23.

Doubtless some provision for emergencies exacting quick action should be made, but that is a matter for the Legislature and not the courts. It is not pretended that anything was done for Wood at the instance of the officers of Boone county, so that a promise to pay is not to be implied. Undoubtedly Boone county should have given him proper medical treatment. *Brock v. Jones County,* 145 Iowa, 397; *Overseers of Poor v. Overseers of Poor,* 114 Pa. 394, (6 Atl. 475). He there became helpless and a fit subject for relief. The duty to extend it was then immediately cast upon the defendant. But from its failure

or refusal to respond, as both the law and the dictates of humanity required, an obligation to pay another individual or county is not to be inferred.   Public-charity is bestowed in this state as a duty, rather than as a corporate obligation, and therefore the extent of relief, as well as its character, is left to the discretion and judgment of the officers charged with the care of the helpless.   Such officers may not delegate that duty to others (*Sloan v. Webster County*, 61 Iowa, 738) and, as seen, because of the omission thereof, succor may not be given by another, not at their instance, at the public expense. - That the officers of Boone county may have been neglectful of the dire needs of Wood, who had never before asked alms, did not charge it with the expense incurred by an individual or another county in giving him the care and treatment his condition required. Nor can the circumstance that its officers gave him a ticket to Nevada be construed as a request to Cerro Gordo county to furnish relief.

By casting the unfortunate adrift, they avoided a manifest duty, and, though this may have resulted in putting the burden on another county, it cannot be said to have been assumed at the request of the officers of Boone county. The cause differs from those relied on by appellant.   In *Overseers of Poor of Pittstown v. Overseers of Plattsburgh,* 15 Johns. (N. Y.) 436, the defendants procured an order of court, transferring a transient pauper to Pittstown, and, as a consequence, he was maintained by the overseers thereof.   Subsequently the order was quashed, and the court held that recovery could be had against the overseers procuring the order, on the principle "that a burden has unjustly been thrown upon Pittstown by the procurement of the overseers of the poor of Plattsburgh; that, the pauper having no legal settlement in this state, it was their duty to have exonerated Pittstown of the burden they had cast upon them."

*In Sheldon v. Fairfax,* 21 Vt. 102, several towns

joined in maintaining a poor farm within the limits of Sheldon; each agreeing to pay its share of the expense. In 1837, the town of Fairfax sent a foreign pauper and family in need of relief there, and they, or a part of them, were cared for at the poor farm until the termination of the arrangement in April, 1846. The town of Fairfax failed to remove them, and refused to pay the expense of their care, but the court held it liable, saying: "The duty of the town of Fairfax to take the pauper away when the temporary purpose for which he was sent was accomplished is necessarily implied from the contract 'between the two towns; and the town of Sheldon having suffered injury by the breach of that duty is entitled to compensation. I apprehend there is no doubt but that upon acknowledged legal principles the plaintiff's claim is well sustained. It rests on the common doctrine that, when one party sustains an injury by the culpable misconduct or negligence of another, the party injured may recover compensation from it by an action on the case." There is nothing in the record to bring the case within the principle recognized in either of these decisions. The officers of defendant did no more than neglect and omit to perform the statutory duty imposed, and, nothing having been done by plaintiff at their instance or request, the court rightly held that there could be no recovery.— *Affirmed.*

Sherwin, C. J., took no part.