STATE, EX REL GUSTAVE BOXBERGER, APPELLANT, V. CHARLES
BURNS ET AL., APPELLEES.

270 N. W. 656

FILED JANUARY 5, 1937.   NO. 30003.

*William R. Patrick,* for appellant.

*James T. English* and *Jack W. Marer, contra.*

Heard before GOSS, C. J., GOOD, EBERLY, DAY and CARTER, JJ., and MESSMORE, District Judge.

DAY, J.

Relator seeks a peremptory writ of mandamus requiring the respondents, the county commissioners of Douglas county, to provide relief for himself and family and all other poor and destitute persons similarly situated in said county. In response to a demand for such action, the board adopted a resolution denying relief for that the funds available for such purpose were exhausted. The case was heard before seven district judges sitting *en banc* (Hastings, Leslie, Fitzgerald, Rhoades, Thomsen, Sears and Yeager) who denied the application of relator.

The petition alleges that the relator is a resident of the county and state and is unable to earn a living for himself or his wife because of involuntary unemployment resulting from unavoidable economic conditions, and that there are 4,500 other families, residents of said county, who are similarly situated. It is also alleged that the question involved in this action is of common general interest to all such poor and destitute persons who are so numerous that it is impractical to bring them all before the court, and relator therefore sues for himself and for the benefit of all other such persons. The relator alleges that he is without any means of subsistence and has neither a father, grandfather, mother, grandmother, children, grandchildren, brothers or sisters of sufficient ability to provide for his support or to contribute thereto; that as a result of prevailing economic conditions he and others are destitute and without the necessaries of life and have no means of obtaining the same; and that his inability to provide for the

support and maintenance of himself and family is not due to intemperance or other bad conduct on his part. The relator prayed for an alternative writ of mandamus commanding the respondents as county commissioners to provide the necessaries of life for the relator and other poor persons, or that the respondents show cause why they have not done so; and that upon the final hearing of this cause a peremptory writ of mandamus be granted requiring and compelling respondents to make an immediate levy sufficient to provide for the estimated cost in an emergency for the necessaries of life for the relator, his wife, and other poor persons of said county and to issue their warrants and drafts on the county treasurer for payment of the necessary expenses incurred by them in support of such poor persons.

The respondents' answer is a denial of plaintiff's destitute situation and that of others similarly situated for that they have no information or knowledge concerning the allegations. The answer admits that relator made a demand upon them for relief and that it was refused for the reason that the county is without funds for the purpose. It is alleged that Douglas county has exhausted all funds available as well as its credit and that certain specified statutes prohibit the board from contracting to spend more money.

The issue presented by the pleadings is whether the statute places a mandatory duty upon the county board to relieve the poor regardless of its ability and financial condition, disregarding the statutory limitations upon county expenditures.

The relator insists that it is the mandatory duty of the county board to render relief in a proper case regardless of the financial condition of the county, notwithstanding statutory limitations upon expenditures. It is asserted that, if the statutes limiting expenditures are given effect, the statute requiring a county to care for the poor is nullified.

Let us first consider the obligation of the county. A county is not liable for the relief of the poor unless the duty is imposed by statute. There is no common-law liability

upon any government unit to support poor and indigent persons. The liability here, if any, must arise by virtue of statutes making it the duty of the county. Paupers are not a public charge unless made so by statute, but the legislature may impose the burden of relief on the county and prescribe how the duty shall be discharged. The legislature has the power to impose upon the county the burden of the relief of the poor unless such power is limited by a constitutional provision. *Gilligan v. Town of Grattan,* 63 Neb. 242, 88 N. W. 477. See, also, *Town of Clearwater v. Town of Garfield,* 65 Neb. 697, 91 N. W. 496; *Rock County v. Holt County,* 78 Neb. 616, 111 N. W. 366; *County of Saguache v. Tough,* 45 Colo. 395, 101 Pac. 411; *Cerro Gordo County v. Boone County,* 152 Ia. 692, 133 N. W. 132.

Our Constitution has no prohibition against such a legislative act. The legislature has by statute imposed the duty for the support of the poor and destitute upon the counties.

"When any such poor person shall not have any such relatives in any county in this state as are named in the preceding sections (68-101, 68-102), or if such relatives shall not be of sufficient ability or shall fail or refuse to maintain such pauper, then the said pauper shall receive such relief as his or her case may require, out of the county treasury, in the manner hereinafter provided." Comp. St. 1929, sec. 68-103.

"The county board of each county shall be the overseers of the poor and are vested with the entire and exclusive superintendence of the poor in such county." Comp. St. 1929, sec. 68-104.

"It shall be the duty of the county board in each county, to provide for all such persons as are unable to earn a livelihood, in consequence of any bodily infirmity, idiocy or other unavoidable cause, the necessaries of life, and in their discretion may confine such poor persons to some moral and discreet householder or householders in the county of sufficient ability to provide for them." Comp. St. 1929, sec. 68-105.

These statutes expressly make it the duty of the county

to provide the necessaries of life for the poor. Is the provision mandatory or directory? An authority states: "In the determination of this question, as of every other question of statutory construction, the prime object is to ascertain the legislative intent, from a consideration of the entire statute, its nature, its object, and the consequences that would result from construing it one way or the other, or from such statute in connection with other related statutes." 59 C. J. 1072.

However, where a statute expressly makes it the duty of a county to provide for poor persons, it is ordinarily mandatory. Nevertheless, it is subject to some limitation when considered in its relation with other statutes. Other statutes place a limitation upon the expenditures of the county.

The respondents had made an estimate of the amount to be produced by their anticipated levy under section 77-1820, Comp. St. Supp. 1935, as $102,000. That section provides: "Notwithstanding any more general or special law on the subject of revenue on maximum levies in force in this state, the county boards of the various counties in this state and the governing body of any municipality in this state, may, at their option, during the years 1935 and 1936, and during said years only, levy a tax of not to exceed one-half mill upon the taxable property within their respective corporate limits for the relief of unemployed and indigent persons."

In anticipation of this fund for emergency poor relief, respondents had contracted debts of approximately the full amount. There was no money in the treasury to the credit of the emergency poor relief fund upon which warrants could be drawn. This trial was held May 27, 1936. The levy was to be made in August thereafter, but the money was spent at least four months before. The emergency relief legislation (section 77-1820, Comp. St. Supp. 1935) does not limit the counties' responsibility for poor and indigent persons.

But the record reveals that there is no money in the general fund available for this purpose. The finances of the county are in serious condition. The primary respon-

sibility rests upon the respondents for its correction. It cannot be assumed by the court. The law does not contemplate that it should be. The respondents insist that since they have already contracted against the emergency fund for approximately the entire amount, and the general fund is exhausted, section 26-116, Comp. St. 1929, prevents them from contracting further and issuing warrants for payment.

Section 26-116, Comp. St. 1929, provides: "It shall be unlawful for the county board of any county in this state to issue any warrants for any amount exceeding the aggregate of eighty-five per cent. of the amount levied by tax for the current year, except there be money in the treasury to the credit of the proper fund for the payment of the same; nor shall it be lawful for the county board to issue any certificate of indebtedness in any form in payment of any account or claim, nor to make any contracts for or to incur any indebtedness in any form in payment of any account or claim, nor to make any contracts for or to incur any indebtedness against the county in excess of the tax levy for county expense during the current year; nor shall any expenditure be made, or indebtedness be contracted to be paid out of any of the funds of said county in excess of the amount levied for said fund."

A county board cannot issue warrants for an amount exceeding 85 per cent. of the amount levied by tax for the current year except there be money in the proper fund for payment of same. Comp. St. 1929, sec. 26-116.

Furthermore, section 26-732, Comp. St. 1929, makes all such contracts void, and section 26-733, Comp. St. 1929, renders the county official liable who causes funds of the county to be paid out in violation of the provisions. The relator argues that this is not applicable to the discharge of the mandatory statutory duty imposed by the pauper statutes. The law, it is said, creates the obligation, not the county board. After all, the county board has some discretion in the granting of relief, even when the funds are available for such purpose. A county board of commis-

sioners is one of very limited power. Both its powers and its duties are circumscribed by many statutes. Its powers and duties are largely, if not entirely, defined by statutes. The county itself is a creature of the state. It was intended by the legislature to so limit the expenditures of a county that the tax burden would not be unbearable.

It is asserted in argument, and the record supports the contention, that an emergency exists unlike any previous situation. The relator is unquestionably in a deplorable situation. Social workers retail a story of poverty, want, and need of cases numerous enough to depress and sadden any one who has any sympathy and concern for his fellow men. Various governmental agencies have spent vast sums of money for the relief of those distressed by the economic conditions. It is said that there were 4,500 families in dire need at the time of the trial. Of course, before granting relief to any, the board of county commissioners is required to satisfy themselves that each comes within the purview of the statute providing for relief. However, it is estimated that it would require at least $130,000 a month to meet the responsibility. This would amount to approximately $1,-560,000 a year. The emergency, as serious as it appears to be, does not empower the county commissioners to do anything except what they are empowered by law to do. On the other hand, the enormousness of the burden does not lessen the power. We have examined the cases cited by the relator, but they are not helpful in the solution of this problem. The facts and circumstances are so unlike that they are not even analogous. Even in *State v. Weir,* 33 Neb. 35, 49 N. W. 785, the case most nearly applicable, the claim was for the payment of a "just indebtedness already incurred." There are cases, not cited, to the effect that where the county has obtained merchandise and keeps it the county is liable *quantum meruit,* though not on the contract. But that is not the situation here. This court is asked to issue a writ compelling the county to incur indebtedness for relief, when there is no money available nor prospective ability to pay. It cannot be done.

In 1935 Douglas county made a levy of 4.95 mills. The levy had not been made in May for 1936. The amount anticipated from the levy was approximately $1,273,532.29. This writ is sought to compel the respondents as commissioners of Douglas county to incur an additional indebtedness of $1,560,000, an amount larger than all the money raised by taxation for all purposes.

It ought not to be overlooked that the people of this state put a limitation upon expenditures by a county. Section 5, art. VIII of the Constitution, provides: "County authorities shall never assess taxes the aggregate of which shall exceed fifty cents per one hundred dollars actual valuation as determined by the assessment rolls, except for the payment of indebtedness existing at the adoption hereof, unless authorized by a vote of the people of the county." County officials should and do ponder the question, where is the money coming from? While the 1935 levy has not quite reached the limit, the difference, where so large a sum is involved, is imperceptible. While the record does not convey the information as to the levy for 1936, it would not, if increased to the limit, make funds available for the purpose of the granting of relief sought to be enforced on the county by the decree of this court.

If the emergency must be met, the legislature within constitutional limits under our system of government should take cognizance of it. If the Constitution is to be changed to meet the emergency, that change must be made by the people in the regular manner. After all, the people of Douglas county may vote to assume the moral obligation of suffering humanity within its borders. But the constitutional and statutory limitations on county expenditures prevent such a large burden from being forced upon the county by the judicial edict of this court.

It is a question whether mandamus is the proper remedy to enforce a statutory obligation to relieve 4,500 families. There is only definite accurate information as to one, the relator. Even the names of others are unknown. A writ could not be entered for their benefit. The board must in-

vestigate the condition of each to determine if they come within the class for which relief is provided. The only purpose their inclusion in this case can serve is to impress the court with the importance of the case and the seriousness of the situation. In this the unnamed parties have served their purpose well.

There is no reversible error in the record, and the judgment is the proper one.

AFFIRMED.