GAGE COUNTY, PLAINTIFF IN ERROR, V. JOHN B. FULTON, DEFENDANT IN ERROR.

16    5
23    722
16    5
47    500
16    5
49    798

1. **Appeal:** BOND. A bond for an appeal from an order of the board of county commissioners disallowing an account is not invalid because signed immediately beneath the penal portion of the bond.

2. **Paupers:** EMPLOYMENT OF PHYSICIAN. In a proper case where the county physician refuses to attend a poor person in destitute circumstances and requiring medical assistance immediately, the overseers of the poor of the proper precinct may employ a physician for that purpose, and the county will be liable for the fair value of his services.

ERROR to the district court for Gage county. Tried below before DAVIDSON, J.

*Colby, Hazlett & Bates*, for plaintiff in error, cited: *Phelps v. Westfiord*, 124 Mass., 286. *DeWitt County v. Wright*, 91 Ill., 529. *Cooper v. County*, 64 Ind., 520. *Bay v. Cook*, 2 Zab., 343.

*J. E. Bush* and *J. N. Rickards*, for defendant in error, cited: *Trustees v. Ogden*, 5 Ohio, 23. *Board v. Trustees*, 21 Ohio State, 373.

MAXWELL, J.

In February, 1881, the defendant filed with the clerk of Gage county an account for $103 against said county for medical services rendered by him to the family of William Bell, a poor person. Attached to the account was the following certificate:

"I hereby certify that I, as overseer of Blakely precinct, employed Dr. J. B. Fulton to make the above visits and furnish medicine for the family of William Bell, seven miles north-west of Beatrice; that the said William Bell and family are poor and needy persons, and in destitute circumstances; that the wife and children of said Bell were sick, and in need of medical attendance; that I called on the county physicians and they refused to go and visit and attend said cases. I further certify that before employing the said J. B. Fulton, I investigated said matter, and found said persons to be poor, and I did declare them to be paupers, and employed him to attend them as such.

"DANIEL FREEMAN,
"Overseer of the Poor, Blakely Precinct."

The claim was rejected by the county commissioners. The defendant appealed to the district court, where a verdict and judgment were given in his favor for the amount of the claim.

Before the trial of the cause in the district court, a motion was made on behalf of the county to dismiss the appeal, the principal ground being that there was no legal bond given for an appeal, the obligors having signed the same immediately beneath the penal portion of the bond. The bond was duly approved and filed, and although it would be more formal if the signatures were beneath the conditions, it is valid if signed beneath the penalty. The law does not require it to be *subscribed*, but provides that the party appealing shall *execute* a bond to the county, etc., conditioned for the faithful prosecution of such appeal, and the payment of all costs that may be adjudged against the appellant. The evident intention of the parties being to authenticate the instrument as their act, the bond is a valid obligation, and the motion was properly overruled. Brown on the Statute of Frauds (4th ed.), § 357, and cases cited.

The principal objection, however, is that the county is not legally liable for the support of a person who is unable to earn a livelihood.

Sections 1 and 2 of the act for the relief of poor persons provides for requiring their relatives to support them. Comp. Stat., chap. 67.

Sec. 3 provides that when any such poor person shall not have any such relatives in any county of this state as are named in the preceding sections, or if such relatives shall not be of sufficient ability, or shall refuse to maintain such pauper, then the said pauper shall receive such relief as his or her case may require out of the county treasury in the manner hereinafter provided.

Sec. 4 provides that justices of the peace of each precinct shall be overseers of the poor, and shall have exclusive superintendence of the poor in their respective precincts, except in corporate towns or cities. It is also provided that the county commissioners of their respective counties may employ a physician by the year to furnish such medical service as may be required by the poor of their county.

Sec. 5 requires the overseers of the poor in their respective precincts to provide for all such persons as are unable to earn a livelihood in consequence of any bodily infirmity, idiocy, or other unavoidable cause, the necessaries of life, etc..

Sec. 11 provides that any person becoming chargeable as a pauper in this state shall be chargeable as such pauper in the county in which he or she resided at the commencement of the thirty days immediately preceding such person becoming so chargeable.

Sec. 12 provides what county shall be liable in case of non-resident paupers.

Sec. 13 provides that if said pauper, by reason of sickness or disease, or by neglect of the authorities of the county in which he or she resides, or for any other sufficient cause, cannot be removed, then the county taking charge of such individual may sue and recover from the county to which said individual belongs the amount expended in behalf of such pauper and in taking care of the same.

Sec. 14 provides that, whenever any non-resident, or any other person not coming within the definition of a pauper, shall fall sick in any county of this state, not having money or property to pay his or her board, nursing, or medical aid, it shall be the duty of the overseers of the poor of the precinct where such person shall be to furnish such assistance to such poor person as they shall deem necessary, etc. Sec. 21 provides that when a poorhouse is established and ready for the reception of poor persons, the powers of the overseers shall cease, except as to particular cases which the court may deem prudent to put out under the provisions of this chapter, etc.

It will be seen that the duty of maintaining paupers and persons not coming within the definition of paupers who shall fall sick in any county of this state, and not having any money or property to pay his or her board, nursing, and medical aid, devolves upon the counties; in other

words, the statute makes the counties legally liable for the same. When a county has a poorhouse, paupers are to be kept there. But the statute does not prohibit aid in a proper case, even if the county has a poorhouse, as where the person requiring aid cannot be removed, or the relief required is merely temporary. The law must be so construed as to make it effective, otherwise it would be in the power of the authorities having charge of the poor to neglect or refuse to relieve the destitute.

Our statute provides for two classes of persons. *First*, Paupers who if the county has a poorhouse are to be kept there. *Second*, Poor persons who for the time being are unable to gain a livelihood from sickness or other cause. To such persons temporary relief may be given at their own homes. This seems to be provided for by sec. 13, which authorizes an action by the county caring for a poor person against the county of his residence, which neglects to provide for him.

In the case under consideration the testimony shows that four or five members of Bell's family were very sick; that they were entirely destitute, and that it was necessary to provide for them at once; that the overseer of the poor for the proper precinct called upon a member of the firm who were the county physicians, and stated the matter to him, and requested him to attend this family, which he in effect refused to do. Medical aid seems to have been absolutely necessary, and the overseer believing from personal observation that such was the case, employed the defendant. In this we think he was perfectly justified, and as the county physician had refused to attend, the county is liable for the reasonable value of the services. As to the value of the services there seems to be no dispute. It is clear that justice has been done, and the judgment is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.