HAMILTON COUNTY, PLAINTIFF IN ERROR, V. T. L. MEYERS, DEFENDANT IN ERROR.

**Non-resident Pauper:** COUNTY NOT LIABLE FOR MEDICAL AT-TENDANCE. A non-resident became sick in Aurora, the county seat of Hamilton county. He had neither money nor property with which to procure medical aid. A physician attended him during his sickness, and while the county board were in session in Aurora. No application was made to the overseers of the poor nor to the county board for aid, and the services of the physician were rendered without any solicitation or direction from any person having authority to create an indebtedness against the county. In an action against the county upon an account for the services rendered, it was *Held*, That there was no legal liability against the county.

ERROR to the district court for Hamilton county. Tried below before NORVAL, J.

*Hainer & Kellogg*, for plaintiff in error, cited: *Salsbury v. Philadelphia*, 44 Penn. State, 303. *Moon v. Howard County*, 97 Ind., 176. *Roberts v. Pottawatomie County*, 10 Kan., 29. *Hendricks v. Commissioners*, 35 Kan., 483.

*Agee & Stevenson* and *J. H. Smith*, for defendant in error, cited: *Gage Co. v. Fulton*, 16 Neb., 5. *Trustees v. Ogden*, 5 Ohio, 23.

REESE, CH. J.

This was an appeal from the decision of the county board of plaintiff in error, by which they rejected a claim of defendant in error for services rendered as a physician for a stranger who was taken sick in Aurora without means to employ a physician to treat him during his illness.

The allegations of the petition were, in substance, that, prior to the 26th day of February, 1885, one J. M. Immel, a non-resident of the state, fell sick at Aurora, without

money or property to pay for his board, nursing, and medical aid, and that he remained sick from that time until after the 23d day of March of the same year, and that during all of said time it was absolutely necessary for him to have medical aid and attention; that prior to the first date named the county board had established a poor-house in said county, and had caused notice thereof to be entered upon their records, but that the condition and health of said Immel was such that he could not have been removed to said poor-house without endangering his life; that at the time of the rendition of the services the county had in its employ a county physician, whose duty it was to render medical services to the poor of the county, but that during the whole period of the sickness of said Immel the said county physician was sick—confined to his room—and was wholly unable to furnish any medical services to the poor of said county, or to any other person; that it was not the duty of said county physician, under his contract with said county, to furnish medical aid to said Immel—he being a non-resident—but that defendant in error was bound so to do, and that he did render such necessary service to said Immel, of the value of $36, an itemized account of which is attached to the petition.

An answer was filed by the county, which, for the purposes of a full understanding of the questions presented, we here copy:

" Comes now the said defendant, and for answer herein avers the facts to be: That it never employed the plaintiff in any manner or form to render the services by him declared upon in his petition ; nor did it in any manner or form authorize the same; nor had it any knowledge or notice whatever of the rendition of said services until after the same were rendered. The defendant further avers that no application whatever was ever made by the said J. M. Immel mentioned in the plaintiff's petition, or by any one for him, to the county physician of the defendant, nor its

board of commissioners, for any assistance, board, nursing, medical, or other aid whatever, until after the rendition of the services by the plaintiff declared upon, although said board of county commissioners were in open, public session at Aurora, the county seat of said county—being at the same village where the plaintiff has for many years resided, and where said Immel then was—as said plaintiff well knew, on the 1st, 2d, and 3d days of March, 1885, and before any considerable portion of said services were rendered by the plaintiff, nor was the condition of destitute circumstances of Immel made known to said county board, or in any way brought to their notice, until after the rendition of the services by the plaintiff declared upon in this action.

"The defendant therefore submits, under advice of counsel, that, in respect to services of the plaintiff herein declared upon, he was and is a mere volunteer, and was not in the employ of the defendant, and that the defendant is not liable to him for said services in any sum of money whatever.

"The defendant further avers that, prior to the rendition of said services, the county board of said defendant, for the better regulation of the indigent of said county, entitled under the law to assistance from said county, and at its expense, at a regular meeting of said board, to-wit, on January 28, 1885, duly adopted and made of record and published among the proceedings the following resolution, viz.: 'In the matter of the pauper poor of this county, it is hereby ordered that no allowance be made by this board for the care of any such poor, unless such poor shall be inmates of the county poor-house, or they shall have been confided to the care of some discreet householder of the county by the county commissioners, as provided by law,' of which said action and resolution of the said board the plaintiff, before the rendition of said services, had actual knowledge."

A general demurrer was filed to this answer, which was

sustained; and plaintiff in error electing to stand upon his answer without further pleading, judgment was rendered in favor of defendant in error. Plaintiff in error files its petition in error in this court, in which it assigns for error the ruling of the district court upon the demurrer, thus presenting for decision the question of the *legal* liability of the county for the services rendered by defendant in error. Whatever may have been the *moral* duties of the county, we must deal alone with its *legal* obligations.

By section 4 of chapter 67, Compiled Statutes, entitled paupers, justices of the peace in each precinct are made the general overseers of the poor in their respective precincts. Their powers as such overseers seem to have been substantially destroyed by section 21 of the same chapter, but we do not think it was the purpose of the legislature to entirely divest the overseers of such authority in the cases mentioned in section 14 of the same chapter. That section is as follows: "Whenever any non-resident or any other person not coming within the definition of a pauper, shall fall sick in any county in the state, not having any money or property to pay his or her board, nursing, and medical aid, it shall be the duty of the overseers of the poor of the precinct where such person shall be, to furnish such assistance to such person as they shall deem necessary; and if any such person shall die, said overseer shall provide all necessary means for a decent burial of such person." This would not destroy the authority of the county board in cases like the one at the bar where it was in session in the immediate vicinity of where the destitute person was sick. In such case their attention should have been called to the fact by the overseer, in order that the necessary provision might have been made for the relief of such destitute person. But it often happens, no doubt, that an emergency may exist, in which relief might not be had by reason of the board not being in session, or from other causes. In such case it would be the duty of the overseer to afford tempo-

46

rary relief. *Gage County v. Fulton,* 16 Neb., 5. But the case at bar presents a different question. The services—no doubt meritorious—were furnished without any direction from any person having authority to act. So far as is shown by the record, the services were entirely voluntary. It is quite probable—in fact we may assume it to be true— that there was at least one justice of the peace in the village within which Immel was sick. Either such justice, or the county board while in session, could have provided for the immediate relief demanded. It may be that it was not the duty of the county physician to attend upon the person referred to, in his sickness, but that fact, if true, could not change the rule which must be applied. It was the intent of the legislature, as shown by the whole line of enactments upon the subject of municipal and county governments, to create boards and persons whose duty it should be to dispense the charities of the public and control public expenditures, in order to secure personal accountability of its officers and agents. While in this case public morals might suggest the payment of the claim presented, yet it would open a door which would be liable to great abuse by the unscrupulous. Hence the law-making power has seen fit to withhold the authority, of persons other than designated officers, to create indebtedness. *Roberts v. Pottawatomie Co.,* 10 Kansas, 29. *Hendricks v. Commissioners,* 35 Id., 483. *Moon v. Howard County,* 97 Ind., 176. *Mansfield v. Sac Co.,* 13 N. W. Reporter, 762.

The judgment of the district court is reversed, the demurrer overruled, and the cause is remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.