RED WILLOW COUNTY V. B. B. DAVIS.

FILED DECEMBER 2, 1896. No. 6914.

1. **Paupers:** LIABILITY OF COUNTY FOR SERVICES OF PHYSICIAN: JUSTICE OF THE PEACE. In counties where no poorhouse has been established and opened for the reception of the paupers, the justices of the peace of the various precincts of such county are vested with entire and exclusive superintendence of the paupers in their precincts; and such a county is not liable for services rendered by a physician to a pauper, unless it appears that such physician had been employed by some of the overseers of the poor.

2. ———: MAINTENANCE: LIABILITY OF COUNTY. When the county board of a county has established and opened a poorhouse for the reception of paupers, and spread such fact upon its records, the jurisdiction and authority of the various justices of the peace of the county over the paupers therein cease, and the superintendence, care, and maintenance of the paupers devolve upon the county board.

3. ———: ———: ———: PHYSICIANS. When a county board has established and opened a poorhouse for the reception of its paupers, the board may either employ a physician by the year to furnish such medical services as may be necessary to the paupers of the county, or may employ a physician to attend each case as it arises.

4. ———: ———: ———: ———: PLEADING. When a petition alleges and a demurrer admits that the plaintiff was employed by the county board to render professional services as a physician for a pauper, the presumption will be indulged that the county board kept within the law in employing the physician, and that a poorhouse had, prior to that time, been established and opened in said county for the reception of its paupers.

5. ———. Chapter 67, Compiled Statutes, construed.

ERROR from the district court of Red Willow county. Tried below before WELTY, J.

*Sidney Dodge*, for plaintiff in error.

*W. S. Morlan, contra.*

RAGAN, C.

B. B. Davis sued Red Willow county in the district court thereof. The county interposed a general demurrer to the petition, which was overruled, and, the county refusing to plead further, judgment was rendered in favor of Davis, to reverse which the county prosecutes error.

Davis alleged in his petition that he was a duly licensed practicing physician, residing in said county; that on the 2d of April, 1893, he "was employed by Red Willow county as said physician and surgeon" to render professional medical services for a pauper; that he rendered such medical attendance and services for said pauper; that the services rendered were reasonably worth the sum of $——; that on the 12th of July, 1893, he presented to the county commissioners of said county his claim against it for the services rendered, and that such claim was rejected. The question presented by the record is whether a county is liable for professional services rendered by a physician to a pauper in pursuance of a contract made with its board of commissioners or supervisors. Chapter 67, Compiled Statutes, deals with the subject of paupers. Section 1 of the chapter provides that certain relatives of a pauper shall be liable for his support, section 2 prescribes what relatives shall first be called upon for the support of a pauper, and section 3 provides that when a pauper shall not have any relatives in this state liable for his support, or, having relatives, they shall be unable or refuse to maintain him, that "then the said pauper shall receive such relief as his or her case may require, out of the county treasury, in the manner hereinafter provided." Section 4 of said act provides: "The justices of the peace in each precinct

shall be, and they are hereby made, overseers of the poor, and are vested with the entire and exclusive superintendence of the poor in their respective precincts, excepting in cases of corporate towns or cities," etc. Section 6 provides that the overseers of the poor shall, at stated times, make report of their actions as such officers to the county board, and section 7 provides that upon the making of such report it shall be the duty of the county commissioners of the county to issue their warrants on the treasurer for the payment of the expenses necessarily incurred by the overseers of the poor. Section 17 provides that the county commissioners in each county are authorized, whenever they see fit to do so, to establish a poorhouse, and by section 21 of the act it is provided that whenever the county commissioners of any county shall enter upon their records that they have established a poorhouse, and that such poorhouse is ready for the reception of the poor in said county, then the authority conferred upon the overseers shall cease to be in force in said county.

In *Gage County v. Fulton*, 16 Neb., 5, it was held that a county was liable for the value of services rendered by a physician to a pauper in pursuance of a contract between the physician and the overseers of the poor of the precinct where the pauper resided.

In *Hamilton County v. Meyers*, 23 Neb., 718, it was held that the county was not liable for professional services rendered by a physician to a non-resident pauper temporarily in said county, the physician not having been employed to render such services either by the county board of the county or any overseer of the poor therein.

In the case at bar the petition alleges, and the demurrer admits, that the physician was employed by the county. This is equivalent to an allegation that the physician was employed by the board of supervisors or the board of commissioners to render the services for which he sues. We think a fair construction of the chapter under consideration is this: That in counties

where no poorhouse has been established and opened for the reception of paupers, then the justices of the peace of the various precincts of the county are vested with entire and exclusive superintendence of the paupers in their precincts, and that such county would not be liable for services rendered by a physician to a pauper unless it appeared that such physician had been employed by some of the overseers of the poor. But when the county board of a county has established and opened a poorhouse for the reception of paupers, and spread such fact upon their records, from that moment the jurisdiction and authority of the various justices of the peace of the county over the paupers therein cease, and the superintendence, care, and maintenance of the paupers of the county devolve upon the county commissioners or board of supervisors; and such board may either employ a physician by the year to furnish such medical services as may be necessary to the paupers of their county, as provided by section 4 of the chapter quoted above, or they may employ a physician to attend each case as it arises. If this construction of the chapter be correct, it follows that unless Red Willow county had established and opened a poorhouse for the reception of its paupers it would not be liable for the services rendered by Davis, unless he had been employed to render such services by some of the overseers of the poor in said county. The petition does not allege that Davis was employed by any of the overseers of the poor in said county to render the services for which he sues; nor does the petition allege that, prior to the time Davis was employed by the county, it had established and opened a poorhouse for the care of its paupers. But since the county authorities of Red Willow county would have been without jurisdiction or authority to make the contract on behalf of the county made the basis of this action, unless a poorhouse had been prior to that time established and opened for paupers, we must indulge the presumption that the county board kept within the law in employing this physician;

that a poorhouse had prior to that time been established
and opened in said county for the reception of paupers,
and that the jurisdiction and authority of the various
justices of the peace as overseers of the poor had ceased.
The judgment of the district court is

AFFIRMED.