C. EDWARD SAYRE, APPELLANT, V. MADISON COUNTY, APPELLEE.

FILED MAY 22, 1934. No. 28830.

*Robert N. Gadbois* and *Kelsey & Kelsey,* for appellant.

*Carl H. Peterson* and *Moyer & Moyer, contra.*

Heard before ROSE and PAINE, JJ., and LIGHTNER, REDICK and THOMSEN, District Judges.

THOMSEN, District Judge.

The question presented on this appeal is whether a physician, not hired by the county, may recover from the county for services rendered to a poor person in an emergency where there exists a duly appointed county physician to care for the poor, the latter physician being able, willing, and ready to serve, but not consulted.

The services were rendered April, 1932, to one, probably not classified as a pauper, but coming within the definition of those entitled to such relief under section 68-114, Comp. St. 1929. The plaintiff's associate conferred with one of the county commissioners, who consented to the diseased person being taken to the Lutheran Hospital at Norfolk, but refused any allowance for surgical service to the applying physician. The county paid the hospital charges. The case was one of great emergency in which, through a timely operation, the poor person's life was saved. According to the testimony, the result might have been fatal had there been any delay.

The essential facts are not in dispute. The county physician's office "was within a stone's throw of the Lutheran Hospital." The county physician had not performed an appendix operation for 12 or 15 years and surgery was not his specialty, but he claimed to be capable of doing such work, and said that he would have performed the operation if he had been called upon, and would have done so without further charge than the fee that the county was paying him. Under the foregoing conditions there can be no recovery. It was the duty of the county to furnish medical aid under the circumstances, but not necessarily to furnish the poor person's choice of medical aid. Statutes of the kind under consideration here should be given a very liberal construction, and county boards should be generous in supplying

the aid which the legislators intended for destitute persons; but when the county provides a physician for that purpose, able and competent to give satisfactory service, and such physician is ready and willing to render such service upon call, then the duty of the county is fulfilled. Under those conditions it is not permissible for the sick one to choose who shall render the service to him. It is stated in *Hamilton County v. Meyers*, 23 Neb. 718, 722: "While in this case public morals might suggest the payment of the claim presented, yet it would open a door which would be liable to great abuse by the unscrupulous." If the county physician had refused or been unable to attend or had been incompetent to take care of the case, a different question might have been presented.

The cause was submitted in district court to a jury. The latter found for defendant. A number of questions are raised with respect to the court giving certain instructions to the jury, but it is unnecessary to discuss these in view of the fact that under the law and the facts no recovery at all could be had.

The judgment of the district court is

AFFIRMED.

PAINE, J., dissenting.

I respectfully dissent from the opinion filed in this case, and desire, first, to set out additional facts disclosed by the evidence.

Dr. H. L. Kindred, a physician and surgeon, of Meadow Grove, was called to see Mrs. Mose Cleveland on the evening of March 31, 1932, and found she had appendicitis, with temperature of 101, pulse 120, and decided she should be operated on at once or the appendix would rupture. Her husband said, "By God, this thing come onto us and I haven't got a dime and no work and no nothing." Dr. Kindred telephoned W. S. Crook, the county commissioner for that district, who asked whether she could not be taken to the state hospital at Omaha, where it would be done free of cost, and when told it was for immediate action, and could not wait, he said to take her

to the Lutheran Hospital at Norfolk, because the county got rates there, and the county would stand the hospital bill, but refused to authorize the surgeon's bill. Dr. Kindred kept ice on her side that night, telephoned to Dr. Sayre, a surgeon at Norfolk, to be ready for operation, and took her to Norfolk, where she was operated upon the next morning.

It was found that the patient had a pus appendix, and both Fallopian tubes were filled with pus and had to be removed, and the wound had to be dressed three times a day, as there was an enormous amount of drainage, but she finally made a good recovery. Dr. Sayre testified that his charge would ordinarily be $250 for this operation, but, it being a pauper case, he filed a claim for only $150, and upon objection by the county board he reduced it to $100, and the bill was then rejected.

It appears that there was a county physician, who had been appointed a short time previous to this, by the name of Dr. T. H. Waters, who was to receive $200 a year. He testified that, while he had not operated on an appendicitis case in possibly 12 to 15 years, if he had been told about this case he would have operated. Dr. Kindred testified: "Q. Do you know who the county physician is, Doctor? A. No; I didn't know you had one. * * * Q. Doctor, during your conversation with Mr. Crook after your examination of Mrs. Cleveland, did Mr. Crook mention anything to you about a county physician? A. He didn't. He didn't mention at any time." Dr. Sayre, the plaintiff, testified: "Q. Doctor, do you know if Dr. Waters is a surgeon? A. I do most of his surgery. Dr. Salter does some and I do some. * * * Q. Does he do any operating? A. I never heard of him doing any operating at all." W. S. Crook, the county commissioner, does not testify that he mentioned the fact to Dr. Kindred that the county had a county physician.

Here was an emergency surgical case, which the law required the county board to take care of. The physician called testified he did not know that the county had a

county physician until after the operation. He called in a skilled surgeon, and together they saved the life of the patient.

I frankly admit that there are strong precedents which support the main opinion, yet, with a little search, I have found opinions, largely from western states, which strongly support this dissent, and take a stand supported by every humanitarian principle.

"A physician employed by township trustees to render aid to a pauper may recover therefor when the regular county physician is under no obligation to attend the township poor, or is incompetent, or inconvenient of access." 48 C. J. 540.

"Mervia Hahn, a poor, friendless, moneyless person, was dangerously ill in the midst of a civilized community. What was to be done? Should the poor creature die for lack of professional succor because it was the wrong factotum, the township trustee, rather than the mayor of Onaga, who engaged the plaintiff's professional services to relieve her distress? This court has held that the important matter in such cases is to save life and succor the distressed." *Leinbach v. Pottawatomie County,* 116 Kan. 347.

"The general rule is that, in cases of emergency attendance of a pauper, a physician may hold the county liable although he acted without the request or the consent of the persons designated by statute as overseers of the poor, where such poor person requires the immediate attention of a physican, who renders services to relieve the necessity; * * * the physician and surgeon may recover reasonable compensation from the county within the limit of the fund provided by law for such purpose." *Board of Commissioners v. Enid Springs Sanitarium & Hospital,* 116 Okla. 249.

"If such services were rendered without authority from any county official authorized by law to bind the county, it must, of course, appear that an emergency existed which rendered it impossible to await such authorization, and that

the situation was promptly reported to the board of county commissioners or to the proper county official, of the proper county." *Sweet Clinic v. Lewis County,* 154 Wash. 416. See, also, *Mandan Deaconess Hospital v. Sioux County,* 63 N. Dak. 538; *Lacy v. Kossuth County,* 106 Ia. 16; *Newcomer v. Jefferson Township,* 181 Ind. 1, Ann. Cas. 1916D, 181; *Bartlett v. Dahlsten,* 104 Neb. 738; *Board of County Commissioners v. Cole,* 9 Ind. App. 474.

"A physician, summoned to attend a pauper, called in another to assist in the performance of a surgical operation, but no claim was made against the county except by the former. Held, that, such employment not being a delegation of authority, the county was liable." *Taylor v. Woodbury County,* 106 Ia. 502.

"Before a cause of action accrues in favor of a county or its county board * * * against a relative who fails to furnish support to an indigent relative entitled to support under the provisions of said section, it is necessary that such delinquent relative be first directed by order of the county board to furnish support and refuse to do so." *Howard County v. Enevoldsen,* 118 Neb. 222.

In *Caton & Starr v. Osborne County,* 110 Kan. 711, the text states that, if the child of an indigent person was seized with appendicitis, or a mastoid attack, which was likely to end in death if an operation was not immediately performed or special medical treatment given, it would be a gross dereliction of duty on the part of the overseer if he did not promptly provide for such an emergency and furnish proper care and relief. The syllabus in this case holds as follows: "Notwithstanding the provisions made for surgical operations and hospital treatment of the children of indigent persons afflicted with certain deformities and maladies, at the state hospital conducted by the regents of the University, it is still the duty of the overseer of the poor in cases of emergency to promptly provide proper medical or surgical treatment for children of the poor where the lack of emergency relief is likely to result in the loss of life or other serious consequence."

*Neslund v. Dawson County,* No. 26554, was decided by our Nebraska Supreme Court Commission April 30, 1929, and its finding is only authority in that one case, yet it is quite in point. Neal Bevard, a 13-year-old boy, was struck with a heavy club on the school-grounds in Cozad, and both bones of his right leg broken. The fibula was broken in four places, and the foot had turned black from lack of circulation. The injured boy was the oldest of seven children, and, with the father and mother, lived in a one-room shack with one bed. The county board was in session at the time of the accident, down at Lexington, 18 miles distant, and, upon being called on long distance telephone by a Good Samaritan, one of the commissioners, who answered the telephone, refused to do anything, and rudely restored the receiver to its hook. He was again called by long distance, and answered, "You are not going to put any more of those d—d paupers on the county," and again hung up the receiver. Dawson county had no county physician at the time. Thereupon, the boy was taken to a hospital at North Platte, the bones were reset several times, 25 X-ray photographs taken, and the limb finally saved. The county board refused to pay claims of $295 for hospital, X-rays, and surgeon's fees in this case, but Commissioners Thompson, Wilson, and Wolff rightly affirmed the judgment of the district court in ordering full payment made by the county board.

In the case at bar, although the member of the county board for that district was assured by a reputable physician and surgeon of Meadow Grove, who had been called, that it was a very serious case and required an emergency major operation, the county commissioner did not disclose the fact that the county had a county physician. The surgeon in charge did not know that the county had a county physician, who had only recently been employed; and in a case like this, when the life of a citizen is hanging in the balance, should the scales of justice be too heavily influenced by technicalities? The life of an unfortunate human being should not be measured in dollars.

The two questions raised by this case are these: (1) If an unfortunate person, without means, is seized with a serious illness, and only an immediate operation will save life, should the claim of a competent surgeon, who acts promptly at the call of distress, and saves the life, be rejected *in toto* by a county board? (2) It being common knowledge that the methods and technique in major operations are improving constantly, has a poor person in distress no alternative but to submit to a delicate major operation by a county physician who admits that he has not performed such an operation in 12 to 15 years?