ARTHUR L. MILLER, APPELLANT, V. BANNER COUNTY, APPELLEE.

283 N. W. 206

FILED JANUARY 4, 1939. No. 30440.

*Rodman & Kuns,* for appellant.

*Glebe & Elliott* and *William H. Heiss, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ.

EBERLY, J.

This action was brought against the county of Banner, defendant, by plaintiff, Arthur L. Miller, while a duly licensed physician, for professional services personally performed for, and also for necessary hospital care rendered to, O. R. Roberts, a poor person or pauper, in Kimball county, Nebraska, on and subsequent to June 7, 1935. There was a trial to the district court for Banner county, a jury being waived, resulting in a finding and judgment for the defendant. From the order of the trial court overruling his motion for a new trial, the plaintiff appeals.

It will be remembered that Banner and Kimball counties are adjacent and contiguous.

The case was tried upon a stipulation of facts, preserved in the bill of exceptions. It appears from such stipulation, viz.:

That on June 7, 1935, one O. R. Roberts, then employed as a farm laborer by one Leonard Johnson on a farm situated in the southern part of Banner county, suffered a hemmorrhage in the brain, causing paralysis, which rendered him temporarily unconscious; that Roberts was then and there in need of immediate medical attention; that his employer, Leonard Johnson, knowing that Roberts claimed to have a legal settlement in Kimball county, without noti-

fying the county physician or any of the county board, or any other official of Banner county, Nebraska, immediately conveyed Roberts to the Kimball hospital, in Kimball county, Nebraska, of which plaintiff was the sole proprietor, and placed him in charge of plaintiff doctor; that during the two weeks following June 7, 1935, it would have been extremely dangerous to the life of Roberts to have removed him from the Kimball hospital, as he was delirious and maniacal at times, and it was necessary to forcibly restrain him and to administer opiates; that the services performed by plaintiff were, as follows:

(Commencing) June 7, 1935.

| | |
|---|---|
| Hospital, 21 days, at $5.00 a day | $105.00 |
| Medications and medicines | 10.00 |
| Special nurse's care | 15.00 |
| Dr. Miller's fee: 1 call a day, $3 a call | 63.00 |
| Total | $193.00 |

That the charges made were reasonable; that during all this time Kimball county, Nebraska, had a duly appointed, qualified, and acting county physician, who then resided in the city of Kimball, in that county, and in such county the Kimball hospital, in which Roberts was treated, is situated; that plaintiff, prior to or during the period of treatment of Roberts, "did not get in touch with said county physician of Kimball county, nor with any other officials of Kimball county," nor did he attempt "to arrange for the care and hospitalization of said O. R. Roberts" with the officials of that county, and that plaintiff was not on June 7, 1935, or at any time subsequent thereto, the county physician of Kimball county, Nebraska.

It is further stipulated, "That on June 7, 1935, and for something over 21 years prior thereto, said O. R. Roberts had a legal settlement in Kimball county, Nebraska, and was a resident and inhabitant of Kimball county, Nebraska; that from the year 1914 to the year 1922, said O. R. Roberts farmed in said Kimball county; that thereafter said O. R. Roberts moved to Kimball, in said Kimball county, and has at all times resided there since that time."

The stipulation further discloses that, although Roberts worked as an employee on various farms in Banner county for a number of years immediately preceding June 7, 1935, he maintained a legal residence in the city of Kimball from the year 1928 to June 7, 1935, and that he voted there at various elections including the general election immediately preceding that date.

It is further shown by the stipulation that there were ample sources of information at hand from which the truth as to the settlement of Roberts could have been ascertained upon inquiry. Such sources plaintiff must have wholly failed to employ, or take any advantage of whatever. It would seem that the slightest investigation would have disclosed the situation.

Under the facts enumerated, it is clear that the disposition made of this case by the district court was, in all respects, correct. The county board of each county are overseers of the poor and are vested with entire and exclusive superintendence of the poor in such county, with authority to employ a county physician. Comp. St. 1929, sec. 68-104.

"Any person becoming chargeable as a poor person in this state, shall be chargeable as such poor person in the county in which he or she has established a legal settlement as hereinafter defined." Comp. St. Supp. 1937, sec. 68-111.

"The term 'legal settlement,' mentioned in this chapter, shall be taken and considered to mean as follows: Every person, except those hereinafter mentioned, who has resided one year continuously in any county, shall be deemed to have a legal settlement therein." Comp. St. Supp. 1937, sec. 68-115.

The proper application of section 68-112, Comp. St. Supp. 1937, under the facts of this case, requires us to construe the words, viz., "If any person shall become chargeable in any county in which he or she has not established a legal settlement *at the time of applying for aid* he or she shall be duly taken care of by the proper authority of the county where he or she may be found" (Italics supplied), to the effect that the first application for aid was made in Kimball

county, and not in Banner county; that Kimball county was the county of the poor person's settlement, and relief must be administered on this basis. Kimball county had employed a county physician, who, under the facts stipulated, must be deemed competent. There is nothing in the stipulation from which it might be inferred that this county physician was not at all times ready, willing, and able to serve; but it is clear that he was not consulted, and no attempt to advise with or secure his services is shown. Manifestly the delivery of the sick man to the county physician would involve no additional risk or exposure when compared to a delivery of the same man to the Kimball hospital.

The case before us clearly falls within the rule frequently announced by this tribunal, viz.: "A physician, not hired by the county, may not recover from the county for services rendered to a poor person in an emergency where there exists a duly appointed county physician to care for the poor, the latter physician being able, willing, and ready to serve but not consulted." *Sayre v. Madison County,* 127 Neb. 200, 254 N. W. 874. See, also, *Newark Township v. Kearney County,* 99 Neb. 142, 155 N. W. 797; *Hamilton County v. Meyers,* 23 Neb. 718, 37 N. W. 623; *Burnham v. Lincoln County,* 128 Neb. 47, 257 N. W. 491.

It must be conceded that Roberts' legal settlement in Kimball county continuing uninterrupted for more than a score of years constituted that county the county of ultimate liability for his maintenance and care. In turn, Kimball county had provided its own exclusive agency to discharge that duty by the regular appointment of its county physician. In so doing it strictly limited its liability for medical services furnished to its poor within its boundaries to this agency so created. Ignorance of plaintiff (if such there was) of the fact that the county board of Kimball county had regularly employed a county physician, and thus provided for the exclusive medical treatment of the poor having a legal settlement therein, will avail him nothing. The rule appears to be that, where the physician rendering services is ignorant of the fact that the county board has employed

another physician, that situation is not an aid to recovery. The former is chargeable with notice of such fact. *Robbins v. Board of Commissioners,* 91 Ind. 537; *Woodruff v. Board of Commissioners,* 10 Ind. App. 179, 37 N. E. 732. This conclusion also necessarily follows from the fact that, by legislative enactment, the board of county commissioners are "vested with the entire and exclusive superintendence of the poor."

The judgment of the district court is, in all respects, correct, and is

AFFIRMED.