MARY MARSHALL, DOING BUSINESS AS CEDAR MANOR
NURSING HOME, FULLERTON, NEBRASKA, APPELLEE, V.
COUNTY OF NANCE, APPELLANT.

79 N. W. 2d 417

Filed November 16, 1956. No. 33999.

*Clarence S. Beck,* Attorney General, *Homer L. Kyle,* and *Robert B. Conrad,* for appellant.

*Brower & Brower,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This action was brought by Mary Marshall against County of Nance to recover $77 for nursing-home care

furnished to Catherine Cyza, an indigent person. A supplemental petition was subsequently filed praying for an additional sum of $210. The trial court found for the plaintiff and entered a judgment for the amount claimed. The county appeals.

The evidence shows that Catherine Cyza was placed in the Cedar Manor Nursing Home, which was operated by the plaintiff, Mary Marshall, on June 8, 1949, by members of her family. She was afflicted with arthritis and has at all times been a bedfast patient. Until 1951 the family of Catherine Cyza paid $65 per month for this nursing-home care. In 1951 the cost of the nursing-home care was increased to $90 per month, the family continuing to pay $65 and the county of Nance the additional $25. Commencing in March 1953, the cost of caring for Catherine Cyza was increased to $120 per month. During this period Catherine Cyza was a recipient of old age assistance in the amount of $65 per month. The children of Catherine Cyza made payments to the county assistance director. The balance was made up from federal, state, and county funds. The county by legislative act was required to pay any necessary amounts which were not paid by the children of the indigent person. § 68-103, R. R. S. 1943. In 1953 the cost of medical, surgical, and hospital care was transferred from state and federal funds to the county. As a result of this legislative change the county gave notice of a change in policy which required the children and relatives of Catherine Cyza to pay the difference between the $65 old age assistance and the amount which plaintiff was then charging. The children made the payments until January 1, 1954, when they began failing in their obligations. In March 1954, plaintiff had $40 unpaid which she requested the county board to pay. They refused; but in April 1954, the county board allowed the $40 claim, with the understanding that the children of Catherine Cyza would pay the difference from that time on. The county board determined that $100

per month would be paid as follows: By old age assistance, $65; $10 from the old age assistance grant of the husband of Catherine Cyza; $7.50 by Louis, her son; and $2.50 each by the 7 other children of Catherine Cyza. In April, May, June, July, August, and September, 1954, the family failed to meet its obligations in the amounts of $7.50, $12.50, $12.50, $9.50, $17.50, and $17.50, respectively. This constitutes the items making up the sum of $77 for which suit was brought.

There is no common-law liability upon a county to support poor and indigent persons. Any liability must arise by a statute imposing the duty upon the county and prescribing the manner of its discharge. The extent of the liability of a county must therefore be found in the legislation creating the duty. State ex rel. Boxberger v. Burns, 132 Neb. 31, 270 N. W. 656.

The general liability of a county to support the poor is prescribed by section 68-103, R. R. S. 1943, which states: "When any poor person shall not have any relatives, as are named in sections 68-101 and 68-102, or if such relatives shall not be of sufficient ability or shall fail or refuse to maintain such poor person, then the poor person shall receive such relief as his or her case may require, out of the treasury of the county in which he or she has legal settlement at the time of applying therefor, in the manner provided in section 68-105." By section 68-105, R. R. S. 1943, it is provided in part the county board "in its discretion may confide such poor persons to some moral and discreet householder or householders in the county of sufficient ability to provide for them."

The record shows also that when Catherine Cyza reached the age of 65 years she was granted old age assistance in the amount of $65 per month in accordance with section 68-208, R. R. S. 1943. By section 77-1601, R. S. Supp., 1955, it was provided that the cost of medical, surgical, and hospital care should be provided by the county. Under section 68-206.01, R. S. Supp., 1955, the

county's liability in this respect commenced on January 1, 1954. We point out that while the present claim was for nursing-home care accruing after January 1, 1954, the nature of the care required by Mrs. Cyza, as shown by the record, was not medical, surgical, or hospital care. The claim cannot therefore fall within the provision.

There is no dispute in the evidence that Catherine Cyza, at all times herein mentioned, was a bedfast patient without any means of support and that she was a poor person within the meaning of section 68-101, R. R. S. 1943. The duty imposed upon the county is a mandatory one. There are, however, some limitations inherently contained in the exercise of the power. The money must be available as was held in State ex rel. Boxberger v. Burns, *supra*. There is no contention here made that funds were not available, but even so, the county board has some discretion in the granting of relief for the poor. It is the duty of the county board to determine if an applicant is without means, whether the applicant has relatives who are able to provide the cost of adequate care, and the amount, if any, that the county will be required to furnish in order to comply with its statutory obligation.

The evidence shows that Catherine Cyza was placed in the plaintiff's nursing home by her relatives. What the agreement was between plaintiff and the members of the family is not material here. When the family failed to provide the necessary funds because of a claimed inability to do so, the county provided certain amounts of money for a period of time. When plaintiff failed to get the amount of her charges for Mrs. Cyza's care from the members of the family, she took it up with the county board to secure its payment. The latter eventually paid the claim of plaintiff amounting to $40, with the distinct understanding that it would continue to pay $65 per month as old age assistance and no more, and that the husband and children of Mrs. Cyza should pay the additional $35 per month. The plaintiff

was informed of this arrangement. She had no agreement with the county board for the payment of any amount over the $65 per month for old age assistance, although she was informed by the old age assistance director that the county would pay the amounts if the children did not. The assistance director could not, of course, bind the county board in this respect. When the children defaulted in their payments, plaintiff did not communicate with the county board for the purpose of obtaining a further understanding or agreement relative to Mrs. Cyza's care. There was no emergency as in the case of Miller v. Banner County, 127 Neb. 690, 256 N. W. 639, which might excuse proper handling with the county board. The record clearly shows that plaintiff had an agreement with the county for the payment of $65 per month for old age assistance and that she was to look to the husband and children for the remainder. She never had any other arrangement with the county board. She did not even seek any different agreement or understanding. The county board did not confide Mrs. Cyza into the care of plaintiff in accordance with section 68-105, R. R. S. 1943. The mandatory duty of the county to care for the poor and indigent does not require it to pay any sum for that purpose which others may have contracted, or which the person furnishing the service might see fit to charge. If the plaintiff was dissatisfied because of the refusal or failure of the husband and children to provide the necessary funds over and above those provided by the county, it was incumbent upon her to seek and obtain a new agreement with the county board if compensation is expected from that source. If the county board refuses to make a new agreement she can properly discontinue to furnish the service. The law does not require the county to assume the obligations of others, whatever they may be. It is required to pay the obligations which it assumes under the mandatory provisions of the controlling statute. If the county board or other public officers, charged

with the care of the poor and indigent, arbitrarily refuse to perform the mandatory duty imposed upon the county, appropriate legal remedies may be employed. But in the absence of an emergency situation, such matters must be handled with the county authorities charged with the duty of caring for the poor. The plaintiff in the present case failed to take the steps necessary to impose liability on the county for the care of Mrs. Cyza over and above the $65 per month it had agreed to pay. Before she can recover, plaintiff must show that she gave the county board an opportunity to exercise its judgment and discretion in the matter by presenting the case to it for consideration and approval. The additional claim for $210 is governed by the same rules.

The appellee argues that the case was tried to the court with the right to a jury waived, and that under such circumstances the findings of the court are entitled to the same weight as the verdict of a jury. With this we agree, but where, as here, the plaintiff has failed to make a case as a matter of law, this court may properly enter the judgment which the trial court should have entered. The judgment of the trial court is clearly wrong as a matter of law. The judgment is reversed and the cause remanded with directions to dismiss.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.