MARY LANNING MEMORIAL HOSPITAL, A CORPORATION, APPELLANT, V. CLAY COUNTY, NEBRASKA, APPELLEE.

101 N. W. 2d 510

Filed March 11, 1960. No. 34726.

*Stiner & Boslaugh*, for appellants.

*J. T. Massie*, for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

WENKE, J.

This is an appeal from the district court for Clay

County. It involves the disallowance of a claim filed by Mary Lanning Memorial Hospital of Hastings, Nebraska, against the relief fund of Clay County, Nebraska, for various hospital services rendered to Oscar F. Freytes. The background out of which this claim arose is as follows:

On Tuesday evening, July 1, 1958, Oscar F. Freytes was injured when he was hit by an automobile while on foot on highway No. 6 in Clay County, Nebraska. He was thereupon taken to and received by the Mary Lanning Memorial Hospital in Hastings, Nebraska. Freytes was a nonresident of Nebraska, being a resident of the State of California. His then economic status brought him within the class to which section 68-114, R. R. S. 1943, has application. Freytes' injuries were critical and needed immediate attention to prevent his death. Because of this emergency situation Dr. Robert Smith, who was on the staff of the hospital, gave Freytes immediate attention. Freytes survived his injuries and stayed in the hospital until after October 31, 1958. The charges of the hospital for his care, which are admittedly the fair and reasonable value thereof, total $1,766.39 from July 1 through October 31, 1958. A claim for this amount, on a form furnished to the hospital by the director of public welfare of Clay County, was filed with the county clerk of Clay County on November 29, 1958. This is the first direct contact the hospital made with any Clay County authorities who, under the statute, are authorized to deal with services of this character. The Clay County board of supervisors rejected the claim on December 2, 1958. Appeal from the disallowance thereof by the board of supervisors was taken to the district court for Clay County. Trial was had therein on March 19, 1959, jury being waived. The court, on July 21, 1959, found generally for the defendant and rendered a judgment accordingly. The hospital filed a motion for new trial and took this appeal from the overruling thereof. We have and will hereinafter re-

fer to appellant Mary Lanning Memorial Hospital as
the hospital; to appellee Clay County, Nebraska, as
Clay County; and to the Clay County Board of super-
visors as the county board.

Within a day or two following Freytes' entry into the
hospital James W. Kenney, administrator thereof, and
Dr. Robert Smith, who was then on the staff of the hos-
pital, each separately called Addie Storrs, the then di-
rector of public welfare of Clay County, and advised her
about Freytes, and the fact that he had been injured in
an accident in Clay County and was in the hospital.
Both the administrator and doctor thereafter talked
to Addie Storrs on several different occasions while
Freytes was in the hospital. They testified that during
these conversations the director, although she denies
doing so, indicated to them that Clay County would be
responsible for Freytes' care and, from these conversa-
tions, they were under the impression that Clay County
would take care of Freytes' bill and relied thereon.
However, they both admitted the director had never
absolutely said that Clay County would do so. Although
the director contacted the county board shortly after
the administrator of the hospital called her the first
time and advised them of what the manager had told
her, the record shows that no one from or for the hos-
pital ever directly contacted the county board in re-
gard thereto until this claim was filed on November 29,
1958.

A jury having been waived, ordinarily the follow-
ing principle would be controlling: "Where a jury is
waived by the parties to an action at law in the district
court, the findings of the trial judge on issues of fact
are equivalent to the verdict of a jury and will not be
reversed on appeal, if supported by sufficient evidence."
Neill v. Dakota County, 140 Neb. 26, 299 N. W. 294.
See, also, Miller v. Banner County, 127 Neb. 690, 256
N. W. 639. However, the material facts here controlling
are not in dispute and the case presents one of law.

The question presented is, does the hospital, under the factual situation here established, have a right to recover from Clay County the fair and reasonable value of the various hospital services which it rendered to Oscar F. Freytes, a nonresident poor person, who was injured in Clay County?

Our search of the statutes fails to disclose any provision therein giving the director of public welfare of Clay County authority to bind Clay County for this type of service, even if she had tried to do so, which she denies, and none is pointed out by counsel for the hospital. In the absence thereof she was without authority to do so. See, Marshall v. County of Nance, 163 Neb. 252, 79 N. W. 2d 417; Hamilton County v. Meyers, 23 Neb. 718, 37 N. W. 623.

In order to get the situation clearly before us as it existed at the time these services were rendered it would be well to go over the law on this subject from the very beginning. At common law the county would not be liable for the relief of the poor for there is no common law liability upon any governmental unit to support poor and indigent persons. The liability, if any, must arise by virtue of statutes making it the duty of the county to do so. See, Marshall v. County of Nance, *supra;* Neill v. Dakota County, *supra;* State ex rel. Boxberger v. Burns, 132 Neb. 31, 270 N. W. 656; Cerro Gordo County v. Boone County, 152 Iowa 692, 133 N. W. 132, 39 L. R. A. N. S. 161; Patrick v. Town of Baldwin, 109 Wis. 342, 85 N. W. 274, 53 L. R. A. 613. As stated in Marshall v. County of Nance, *supra:* "There is no common-law liability upon a county to support poor and indigent persons. Any liability must arise by a statute imposing the duty upon the county and prescribing the manner of its discharge."

This state, from its inception, has had laws pertaining to the care of paupers. See Chapter 40, Paupers, Sections 1 to 23, R. S. 1866, which is now Chapter 68, article 1, Paupers, R. R. S. 1943. It deals with both non-

residents and those having legal settlement in the various counties of this state.

The Legislature has the power to impose upon a county the burden of relief of the poor and destitute and to prescribe the method of discharging that duty unless such power is limited by the Constitution. Our Constitution has no prohibition against such legislation. State ex rel. Boxberger v. Burns, *supra*. The extent of the liability of a county must be found in the legislation creating the duty. Marshall v. County of Nance, *supra*. The liability of the county is purely statutory. Cerro Gordo County v. Boone County, *supra*.

The county board of each county is the overseer of the poor and is vested, by statute, with the entire and exclusive superintendence thereof in such county, whether such poor persons be residents or nonresidents. Miller v. Banner County, 135 Neb. 549, 283 N. W. 206.

Whether a person comes within the purview of the pauper statutes, so as to be entitled to the relief therein provided, is a question of fact to be determined by the county board in each particular case. See, Marshall v. County of Nance, *supra;* State ex rel. Boxberger v. Burns, *supra*. When the statutes, such as ours, expressly make it the duty of the county to provide for poor persons it is mandatory, subject, however, to such limitations as are provided in other statutes relating thereto. Marshall v. County of Nance, *supra;* State ex rel. Boxberger v. Burns, *supra*.

We said early in the history of the state that: "The law must be so construed as to make it effective, otherwise it would be in the power of the authorities having charge of the poor to neglect or refuse to relieve the destitute." Gage County v. Fulton, 16 Neb. 5, 19 N. W. 781. See, also, Sayre v. Madison County, 127 Neb. 200, 254 N. W. 874, 93 A. L. R. 896. And, as stated in Marshall v. County of Nance, *supra:* "If the county board or other public officers, charged with the care of the poor and indigent, arbitrarily refuse to perform the

mandatory duty imposed upon the county, appropriate legal remedies may be employed." See, also, Patrick v. Town of Baldwin, *supra;* Cerro Gordo County v. Boone County, *supra.*

Prior to 1947 the statutes dealing with the subject of paupers had no express provisions providing for the manner of county boards discharging their duties in regard to the subject matter herein involved except the authority to employ a county physician or physicians. See § 68-104, R. S. 1943. Generally we have held, in the absence of such express provisions, that when there is opportunity to consult local authorities, previous authorization for rendering such services must be secured from those who have authority to dispense such charities in order to have a valid claim therefor. See, Marshall v. County of Nance, *supra;* Neill v. Dakota County, *supra;* Hamilton County v. Meyers, *supra.* However, we have either indicated or held that no such previous authorization is required in emergency cases, such as herein involved, holding in such cases that if the necessary services are rendered the law imposes an obligation upon the county to pay the reasonable value thereof. See, Burnham v. Lincoln County, 128 Neb. 47, 257 N. W. 491; Miller v. Banner County, 127 Neb. 690, 256 N. W. 639; Hamilton County v. Meyers, *supra.* There are, however, cases which hold that although an emergency existed it was either not controlling or would not permit recovery. See, Miller v. Banner County, 135 Neb. 549, 283 N. W. 206; State ex rel. Boxberger v. Burns, *supra;* Sayre v. Madison County, *supra.*

With this situation before it the 1947 Legislature amended section 68-104, R. S. 1943, which section designated the county board of each county in the state as overseers of the poor therein, which would include both nonresident and those having settlement therein, and vested such county board with the entire and exclusive superintendence of such poor. The 1947 legislation added to section 68-104, R. S. 1943, the following

language: "In providing medical and hospital care for the poor, the county board shall make use of any existing facilities, including tax supported hospitals and charitable clinics so far as the same may be available. *The county board shall have authority to arrange or contract for medical, surgical and hospital services* at such rates as may be determined *and the county shall not be liable for any such services not expressly authorized by the county board."* See Laws 1947, c. 218, § 1, p. 705. (Emphasis ours.) As amended, this statute is now section 68-104, R. R. S. 1943.

"The powers of a county are limited to those prescribed by statute, and a county board can discharge a statutory obligation only by the statutory means provided by the legislature." State ex rel. Boxberger v. Burns, *supra.* See, also, Marshall v. County of Nance, *supra.* An obligation against a county for services rendered in relieving a poor person who is entitled by law to be so relieved can only be incurred in the manner indicated by the statutes specifically providing the method for doing so. See Patrick v. Town of Baldwin, *supra.* Where a statute contemplates that certain liabilities for the support of the poor shall rest on contract that is the exclusive and only way of incurring them. See, Patrick v. Town of Baldwin, *supra;* Cerro Gordo County v. Boone County, *supra.* We said as early as Hamilton County v. Meyers, *supra,* that: "Whatever may have been the moral duties of the county, we must deal alone with its legal obligations." Then, in State ex rel. Boxberger v. Burns, *supra,* we said: "If the emergency must be met, the legislature within constitutional limits under our system of government should take cognizance of it." And, as stated in Cerro Gordo County v. Boone County, *supra:* "Doubtless some provision for emergencies exacting quick action should be made, but that is a matter for the Legislature and not the courts." Unless the amendment was intended to cover all situations dealing with the subject therein covered, in-

cluding emergencies, it would serve little or no purpose in view of our former holdings. We find the requirements of section 68-104, R. R. S. 1943, have application and are controlling.

But the hospital contends, in effect, that the amendment to section 68-104, R. S. 1943, by the 1947 Legislature should not be so construed as to defeat the rights of a nonresident to those benefits to which he is entitled under section 68-114, R. R. S. 1943, and which, as it claims, it was the duty of the county board to furnish to Freytes under the circumstances here established. We think the following principles have application here:

"All statutes relating to the same subject should be construed and considered together for the purpose of giving effect to the legislative intention." State ex rel. Menard v. Nichols, 167 Neb. 144, 91 N. W. 2d 308.

"All statutes in pari materia must be taken together and construed as if they were one enactment, and, if possible, effect given to every provision." Chicago & N. W. Ry. Co. v. City of Seward, 166 Neb 123, 88 N. W. 2d 175.

Sections 68-103 and 68-105, R. R. S. 1943, impose upon the several counties of the state certain obligations as to poor persons having legal settlement therein and the duty of the county board of each county in regard thereto, whereas, section 68-114, R. R. S. 1943, imposes certain obligations upon a county as to nonresident poor under circumstances therein set forth, and duties upon the county board of such counties when such nonresidents become sick or in distress therein and likely to suffer because thereof. Section 68-104, R. R. S. 1943, as already stated herein, vests in the county board of each county in the state, who are therein made the overseers of the poor, the entire and exclusive superintendence of the poor of such county which, under the entire act relating to paupers, would include both resident and nonresident poor persons. Therefore in apply-

ing the provisions of section 68-104, R. R. S. 1943, they should be considered as applying to both resident and nonresident poor persons in each county. To hold otherwise would make a different rule applicable in case of an emergency, depending upon whether the poor person entitled to relief was a resident or nonresident, a condition which we are sure the Legislature did not intend and which we are not free to judicially impose. Insofar as medical, surgical, and hospital services for poor persons in the county are concerned we think the requirements in regard thereto as provided by the 1947 Legislature has application to both resident and nonresident poor persons who, under the statutory provisions, are entitled thereto.

But the hospital contends that we have recognized the emergency rule as being in effect since the 1947 amendment to section 68-104, R. S. 1943, by reason of our holding in Marshall v. County of Nance, *supra.* It is true that therein we referred to our holding in Miller v. Banner County, 127 Neb. 690, 256 N. W. 639, in case of an emergency and went on to say: "But in the absence of an emergency situation, such matters must be handled with the county authorities charged with the duty of caring for the poor." No emergency was involved in Marshall v. County of Nance, *supra,* and we did not therein consider the amendment to section 68-104, R. S. 1943, by the 1947 Legislature, and the effect thereof. The most that can be said of the foregoing quoted language is that it was dicta and not here controlling.

Having come to the conclusion that the hospital did not comply with the requirements of section 68-104, R. R. S. 1943, as it relates to medical, surgical, and hospital services, it cannot, under the circumstances here disclosed, hold Clay County liable therefor even though an emergency existed as to the need therefor by Freytes at the time he entered the hospital after he was injured and, because of that fact, the judgment of the trial court

denying the hospital claim should be and is affirmed.

The hospital undoubtedly could have avoided most of the difficulty it now finds itself in if, at the very first opportunity after Freytes was admitted, it had presented the matter directly to the county board for if the county board had arbitrarily refused to perform the mandatory duty imposed upon it by section 68-114, R. R. S. 1943, appropriate legal remedies could have been taken to enforce that duty.

AFFIRMED.