CREIGHTON-OMAHA REGIONAL HEALTH CARE CORPORATION, A NEBRASKA NONPROFIT CORPORATION, DOING BUSINESS AS CREIGHTON MEMORIAL ST. JOSEPH HOSPITAL, APPELLANT, v. DOUGLAS COUNTY, NEBRASKA, A POLITICAL SUBDIVISION OF THE STATE OF NEBRASKA, APPELLEE.

277 N. W. 2d 64

Filed March 20, 1979. No. 41996.

C. E. Heaney, Jr., and John K. Green of Kennedy, Holland, DeLacy & Svoboda, for appellant.

Donald L. Knowles, Douglas County Attorney, and John Q. Powers, for appellee.

Heard before BOSLAUGH, CLINTON, and WHITE, JJ., and RIST and WINDRUM, District Judges.

BOSLAUGH, J.

The plaintiff is a nonprofit corporation which operates Creighton Memorial St. Joseph Hospital in Omaha, Nebraska. The plaintiff appeals from an order sustaining a demurrer and dismissing the petition of the plaintiff in an appeal from the disallowance of a claim by the county board of Douglas County, Nebraska.

The petition alleged that on or about September 22, 1977, Willie Somora, a poor person within the meaning of sections 68-103 and 68-104, R. R. S. 1943, presented himself at the emergency room of the plaintiff's hospital for treatment of injuries. Documents which are included as a part of the transcript of the proceeding before the county board show that Somora had been employed as a cook's helper prior to being treated at University Hospital and released to Douglas County Hospital for treatment of alcohol abuse. Somora was then transferred to St. Joseph's Hospital for treatment of injuries Somora had sustained when he had been beaten and robbed. At St. Joseph's Somora was treated for a broken ankle, an

abscess on his right thigh, and a hernia. The hospital services furnished to Somora by the plaintiff amounted to $1,951.80.

The petition further alleged that after ascertaining the physical condition and financial resources of Somora, the plaintiff, by letter, requested the county board to arrange for appropriate medical and hospital care for Somora. The request was made before the plaintiff had rendered other than immediate necessary emergency services to Somora. The letter which appears in the transcript reads as follows: "Enclosed please find applications for medical or hospital assistance or both for the following medically indigent patient(s) now located in Douglas County who have presented themselves for treatment by the Saint Joseph Hospital.

"Simultaneously herewith we have delivered to the Douglas County Welfare Office the relevant medical and/or financial data needed to support these applications.

"The Hospital is willing to undertake to treat or continue to treat these patients if you are willing to contract with us for their care. If not, would you please advise us to whom these individuals should be referred in order to insure that they receive necessary and appropriate medical and hospital treatment."

The petition further alleged that the plaintiff received no response from the county board to its request; that "as a result of the defendant's failure to provide necessary care, plaintiff was required to admit Mr. Somora and render those hospital services medically indicated" which had a fair and reasonable value of $1,951.80; and that by reason of the facts alleged the defendant was indebted to the plaintiff upon a contract implied by law.

The petition also alleged that an agreement existed between the plaintiff and the defendant that patients of the Douglas County Hospital who were in

need of further medical treatment of a nature which the county hospital no longer provided, might be transferred to the plaintiff's hospital for treatment at the expense of the defendant. Somora, however, had been discharged from the county hospital by the defendant and then assisted in obtaining care at the plaintiff's hospital rather than transferred to the plaintiff's hospital under the transfer agreement.

The defendant contends that the demurrer was properly sustained for two reasons: (1) The petition failed to plead the jurisdictional facts; and (2) a county is not liable for hospital services furnished to poor persons in the absence of express authorization by the county board.

The defendant's first contention is based upon the absence of detailed allegations in the petition as to each step performed by the plaintiff in perfecting its appeal from the action of the county board. The defendant cites no authority which directly supports its contention and there is no such requirement.

It is a general rule that a plaintiff must plead and prove the jurisdictional facts, the facts which show that the court has jurisdiction of the subject matter of the action. Everts v. School Dist. No. 16, 175 Neb. 310, 121 N. W. 2d 487.

The jurisdictional facts in this case were that the plaintiff had filed a claim with the county board for hospital services furnished to a poor person and that the claim had been disallowed. These allegations were sufficient to show that the county board had jurisdiction of the claim and that upon disallowance the trial court could acquire jurisdiction by appeal.

The defendant's second contention is that the county is not liable for necessary hospital services furnished a poor person in the absence of prior express authorization by the county board. The defendant relies upon section 68-104, R. R. S. 1943, which provides as follows: "The county board of each county shall be the overseers of the poor and are vested with the

entire and exclusive superintendence of the poor in such county; Provided, the county board may employ a physician or physicians by the year to furnish such medical service as may be required for the poor of its county. In providing medical and hospital care for the poor, the county board shall make use of any existing facilities, including tax supported hospitals and charitable clinics so far as the same may be available. The county board shall have authority to arrange or contract for medical, surgical and hospital services at such rates as may be determined and the county shall not be liable for any such services not expressly authorized by the county board."

The county board by statute is made the overseer of the poor and the county has a mandatory duty to provide for poor persons whether they are residents or nonresidents of the county. §§ 68-104, 68-114, R. R. S. 1943; Mary Lanning Memorial Hospital v. Clay County, 170 Neb. 61, 101 N. W. 2d 510. We have said that the law must be construed so as to make it effective, otherwise it would be in the power of the authorities having charge of the poor to neglect or refuse to relieve the destitute. Gage County v. Fulton, 16 Neb. 5, 19 N. W. 781. If the county board or other public officers who are charged with the care of the poor and indigent arbitrarily refuse to perform their mandatory duty in respect to the care of the poor and indigent, appropriate legal remedies may be employed. Marshall v. County of Nance, 163 Neb. 252, 79 N. W. 417.

In emergency situations the liability of the county has been recognized. In Miller v. Banner County, 127 Neb. 690, 256 N. W. 639, we said: "In the present instance we have a case of an emergency, where an immediate operation was necessary for the saving of human life. No county physician appears in the picture, and the county board has wholly failed to provide the essentials of the necessary care that

common humanity requires. Obviously, under these circumstances, the rule our statutory provisions imply and the history of poor relief in all jurisdictions sustains governs, viz., that in cases of emergency a physician should, if reasonably possible, attempt to communicate with the proper corporate authorities charged with the care of the poor, but if an arbitrary refusal is given, or if such corporate authorities be noncommittal, the necessary services may be rendered notwithstanding, and the law imposes an obligation upon the county to pay the reasonable value of such services." See, also, Burnham v. Lincoln County, 128 Neb. 47, 257 N. W. 491.

In Mary Lanning Memorial Hospital v. Clay County, *supra*, the county was held not liable for hospital services furnished a nonresident poor person where there had been no direct contract between the hospital and the county board. In that case we said: "The hospital undoubtedly could have avoided most of the difficulty it now finds itself in if, at the very first opportunity after Freytes was admitted, it had presented the matter directly to the county board for if the county board had arbitrarily refused to perform the mandatory duty imposed upon it by section 68-114, R. R. S. 1943, appropriate legal remedies could have been taken to enforce that duty."

In this case the plaintiff notified the county board of the situation by a letter which was hand delivered to the county board. The plaintiff received no response. The plaintiff then proceeded to furnish the necessary treatment which Somora required for his broken ankle, abscess, and hernia. Under these circumstances it would appear that a duty would arise for the county to pay to the plaintiff the reasonable value of the services which the county was obligated by statute to furnish to Somora. Otherwise, the board has the power to neglect or refuse to relieve the destitute.

In a situation such as in this case, the hospital acts

at its peril in furnishing hospital services without prior authorization. The question as to whether the patient qualifies as a poor person entitled to hospital services at the expense of the county is a question of fact to be decided in the first instance by the county board. See Neill v. Dakota County, 140 Neb. 26, 299 N. W. 294. The case before us is here on demurrer so that issue may be resolved upon a trial on the merits.

The judgment of the District Court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.